PUBLIC SERVICE COMMISSION, STATE OF INDIANA
THROUGH THE STATE HIGHWAY COMMISSION
OF INDIANA

*v.*

FORT WAYNE UNION RAILWAY COMPANY.

[No. 28,947. Filed April 21, 1953.]

84

*Edwin K. Steers, Jr.,* Attorney General, *J. Emmett McManamon,* former Attorney General, *Clyde Jones, Connor Ross, Richard G. Stewart, Fred R. Bechdolt* and *Jesse D. Wright,* Deputy Attorneys General, for appellant.

*McHale, Patrick, Cook & Welch,* of Indianapolis, and *Clay Marsteller,* of Cleveland, Ohio, for appellee.

DRAPER, J.—The appellee, Fort Wayne Union Railway Company, was organized for the purpose of affording interchange facilities between the lines of four other railroads and the various industries served by them in and near Fort Wayne, Indiana. In 1925 it constructed two miles of main line at a grade elevation which it deemed most suitable and best adapted to its contemplated operations and said line has been and is now being operated for such purposes at said grade and elevation. A part of its right of way runs in a north and south direction. It is 110 feet wide for a distance of about 1400 feet south of a point designated as the "point of crossing," and 100 feet wide north of said point for a distance of about 150 feet, beyond which it increases in width to accommodate a curve to the northwest. The right of way just described was procured in 1924 by condemnation, and consists of an easement for railway purposes upon and over the land comprising the same.

In the furtherance of a program to consolidate and relocate U. S. Highways Nos. 24 and 30, which now run in an easterly and westerly direction through the city of Fort Wayne, and thus by-pass said city, the State Highway Commission did on August 21, 1950, file its petition with the appellant, Public Service Com-

mission of Indiana, whereby it sought the approval of the establishment of a crossing "at grade" of said consolidated highways over the right of way and tracks of said company at said "point of crossing," which coincides with the point where the width of said right of way is reduced from 110 feet to 100 feet, as above mentioned.

The petition was filed pursuant to the provisions of that portion of Burns' Stat., §55-1807 which reads as follows:

> "Whenever it shall be desired to establish or extend a highway at grade over any railroad, street railroad, interurban street railroad or suburban street railroad in this state, it shall be necessary, before so establishing or extending the same, that the petitioners therefor shall, by procedure to be prescribed by the railroad commission (public service commission) of Indiana, obtain the authority of said commission therefor."

The exhibits attached to the petition and the evidence adduced at the hearing show that the grade of the proposed highway at the "point of crossing" would be approximately seven feet higher than the present elevation of the rails of the appellee company at such point. If the proposed highway is established at the grade as laid out, it will prevent the railroad company from using its tracks unless it raises its grade to the level of the highway. This it could do by constructing an embankment extending about 700 feet north and 300 feet south of the proposed point of crossing. The embankment would be 43 feet wide at the bottom and 22 feet wide at the top, ascending from either end to a height of seven feet at the "point of intersection." The cost of this project would exceed $20,000. It would also be necessary for the company to enlarge and extend a culvert located about 150 feet north of the proposed crossing.

The appellee filed objections to the granting by the Public Service Commission of Indiana of its approval of the establishment of such highway across the tracks at such higher elevation. Evidence was heard, that of the appellee being designed to show that the approval of a grade seven feet higher than that of the present roadbed would be unreasonable, and therefore unlawful, and the appellee further contended that the proposed elevation of the highway seven feet higher than the established grade of the railway did not constitute a crossing "at grade" as contemplated by §55-1807, *supra,* pursuant to which section the petition was filed.

Following the hearing, and on February 1, 1951, the Public Service Commission entered an order as follows:

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that the establishment of a highway crossing at grade over the right-of-way and tracks of said Fort Wayne Union Railroad near Fort Wayne, Indiana, be approved as planned by said Indiana State Highway Commission."

Thereafter, its petition for rehearing having been denied by the Public Service Commission of Indiana, the railway company filed this action against the Public Service Commission and the State of Indiana, through the State Highway Commission, in the Allen Superior Court, Room Two, to set aside and vacate the order of the Public Service Commission above set out for the reason that such order is insufficient, unreasonable, and unlawful.

The Superior Court found for the company and entered a judgment vacating and setting aside the order of the Public Service Commission. This appeal is from that judgment.

The appellant asserts that the procedure for court review of the Public Service Commission's order is

governed by §6 of the Railroad Commission Act, being Acts 1905, ch. 53, §6 as amended in 1907 and 1913, (Burns' Stat., §55-112), and since the appellee did not take certain of the steps there outlined, within the time limits therein fixed, the trial court was without jurisdiction to entertain appellee's action to vacate and set aside the order of the Commission.

The Railroad Commission Act just referred to created a Railroad Commission and defined its powers and duties. By Acts 1913, ch. 76, §4, (Burns' Stat., §54-107) the Railroad Commission was abolished and its powers and duties were transferred to the Public Service Commission of Indiana, created by that act. By Acts 1933, ch. 93, the Public Service Commission of Indiana created by Acts 1913 was abolished and the Public Service Commission created. By Acts 1941, ch. 101, the Public Service Commission created by the 1933 Acts was abolished and the Public Service Commission of Indiana created. The powers and duties originally conferred or imposed upon the Railroad Commission now reside with the Public Service Commission of Indiana. Acts 1941, ch. 101, §12 (Burns' Stat., §54-119).

By Acts of 1929, ch. 169, (Burns' Stat., 1933, §§54-429 to 54-438) the procedure for review of the decisions, orders, determinations, requirements or directions of the Public Service Commission is prescribed, and all laws or parts of laws in conflict therewith are repealed. The word "order" as therein used is made to include any final order, decision, ruling, determination, requirement or direction made by the Public Service Commission upon any matter within its jurisdiction. Since the railroad commission had been abolished and all of its powers and duties had been transferred to the Public Service Commission in 1913, and since the Act

of 1929 is expressly made to reach any decision, ruling, order, determination, requirement and direction of the Commission which adversely affects any person, firm, association, corporation, city, town or public utility, without regard to the law the Commission is administering, it seems to us that the procedural requirements outlined in §6 of the Railroad Commission Act no longer control, and that the provisions of the 1929 'Act apply.

It would appear that the appellant believed that ch. 169 of the 1929 Act prescribed the procedure to be followed in this action, for it followed the requirement of §5 thereof (Burns' Stat., §54-433) and filed in the trial court a transcript of all the proceedings had and all the testimony heard, together with the original of all pleadings, exhibits and other necessary papers relating thereto, and such was thereafter received in evidence at the trial before the court pursuant to the provisions of such section. The court heard additional evidence, which did not differ substantially or materially from the evidence presented before the Public Service Commission.

On oral argument the appellant for the first time took the position that these proceedings should be governed by the provisions of the Administrative Adjudication Act, being Acts 1947, ch. 365, (Burns' Stat., 1951 Repl., §63-3001 et seq.), which position is inconsistent with its earlier assertion that the case is controlled by §6 of the Railroad Commission Act. Appellant now insists the case could not be governed by Acts 1929, ch. 169, supra, because of the repeal of so much of the latter as is in conflict with the provisions of the Administrative Adjudication Act. But the Public Service Commission of Indiana is expressly excluded from the operation of the Adminis-

trative Adjudication Act, so that the procedure there provided for administrative adjudication and review does not govern its operations.

The appellant says it was not necessary for the Public Service Commission to make findings of fact as required by Acts 1941, ch. 101, §5, (Burns' Stat., 1951 Repl., §54-112). That section provides, in part, that: "The Commission created by this act shall in all controversial proceedings heard by it be an impartial fact-finding body and shall make its orders in such cases upon the facts impartially found by it."

The reach of that provision is not restrained in either the title or body of the 1941 Act. It is not limited to proceedings arising under the Public Utilities Act, Motor Vehicles Act, the Railway Commission Act, or any other Act, neither is it expressly provided that it shall apply to any or either of such. By its terms it relates to *all* controversial proceedings before the Commission, (Sec. 5) and Sec. 6 imposes upon the Commission the duty of making a careful study of all laws with the administration of which it is charged, and of the practices of public utilities, motor vehicle carriers and of railroads. In *Wabash Valley Coach Co*. v. *Arrow Coach Lines* (1950), 228 Ind. 609, 94 N. E. 2d 753, a similar contention was made. It was asserted that the Motor Vehicle Act did not come within the 1941 act so as to make it necessary for the Public Service Commission to make findings of fact in the matter of the issuance of a certificate of public convenience and necessity to operate busses over certain routes. The contention was rejected. We hold that the order of the Public Service Commission in this case, to be valid, must rest upon a sufficient finding of facts. *Kosciusko County, etc*. v. *Public Service Comm*. (1948), 225 Ind.

666, 77 N. E. 2d 572; *Wabash Valley Coach Co.* v. *Arrow Coach Lines, supra.*

The trial court, though not requested to make findings of fact and state its conclusions of law thereon, prepared and filed a written opinion in which the court reviewed some of the evidence and outlined its views concerning the law of the case. Relying upon the familiar general rule that the finding of the court must, under such circumstances, be regarded and treated as a general finding,[1] it is insisted that the finding must be taken as a general finding for the appellee upon all the issues presented to the court.

But in *Gavin* v. *Miller* (1944), 222 Ind. 459, 54 N. E. 2d 277, a case in which the court made special findings of fact and predicated its judgment thereon though no special findings of fact or conclusions of law were requested, we held that it was proper to look to the findings to determine what matters were actually adjudicated. It is important for this court to know the basis upon which administrative action is taken, and the reason for the vacation of the orders of such an agency by a court. We should not be required to assume that the court has decided an issue when the record, to which we may look to ascertain the meaning and effect of a judgment, *State ex rel. Booth* v. *Beck Jewelry Enterprises* (1942), 220 Ind. 276, 41 N. E. 2d 622, 141 A. L. R. 876, reveals that the court has not, in fact, done so.

In this case the record indicates that the trial court did not "pass upon the evidence presented (and) as to

1. See i.e., Burns' Stat., 1946 Repl., §2-2102; *C. & E. I. Ry. Co.* v. *Public Service Commission* (1933), 205 Ind. 253, 186 N. E. 330; *Connersville Wagon Co.* v. *McFarlan Carriage Co.* (1906), 166 Ind. 123, 76 N. E. 294; *Jacobs* v. *The State* (1891), 127 Ind. 77, 26 N. E. 675; *Sheets* v. *Jones* (1924), 81 Ind. App. 41, 142 N. E. 391; Flanagan, Wiltrout & Hamilton Ind. Trial & App. Prac., §1732 (3).

whether or not the order of the Commission was reasonable upon the basis of the evidence presented." Instead, the decision turned on entirely different considerations. The court decided (1) that the order of the Public Service Commission was one which the Commission had no lawful authority to make, in that the crossing was not one "at grade" as contemplated by §55-1807, *supra,* and (2) that the order of the Commission was unlawful in that it was not based upon appropriate findings of fact. It went no further.

We proceed to a consideration of the first question.

The Public Service Commission has no power or authority to create or establish a public highway. *L. & N. R. R. Co.* v. *Public Service Comm.* (1934), 206 Ind. 51, 185 N. E. 902, 188 N. E. 321. The State Highway Commission is empowered by statute to locate state highways and the authority to locate includes the right to establish the course and fix the grade thereof. *City of Cambridge* v. *Railroad Commissioners* (1891), 153 Mass. 161, 26 N. E. 241.

The right to project a state highway across an existing railroad is clearly recognized by §55-1807, *supra,* but under the provisions of that section, when the projection thereof as planned necessitates the establishment of a crossing at grade, or the intersection of the highway and railroad at the same level, authority therefor must first be obtained from the Public Service Commission. Under the statute that commission may grant or refuse authority to establish the grade crossing so sought to be established. It can go no further, for its authority is measured and bounded by the terms of the statute which grants the authority. *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 49 N. E. 2d 341.

We reject the contention that the Public Service Commission is empowered only to grant or refuse authority to establish a highway at the existing grade of the railroad. That is not the language of the statute. Such a narrow interpretation would unduly restrict the clear import of the language of the statute and serve to defeat a clear legislative intent to vest in the Public Service Commission a measure of supervision and control over the establishment of grade crossings in this state.

The elimination of grade crossings is a matter of nation-wide concern. This provision affords the Public Service Commission an opportunity to ascertain the facts surrounding the proposed establishment of a new grade crossing. It enables the Commission, in the exercise of a sound discretion, to refuse permission to establish another grade crossing, which refusal might in many cases cause the initiation of proceedings leading to the establishment of a separation of grades, over which the Commission has jurisdiction.[2]

We need not now discuss the many other sound reasons for the requirement that the Public Service Commission must first approve the establishment of grade crossings. We hold that the Public Service Commission had jurisdiction to enter an order in the premises. We might add that if, as appellee contends, the proposed crossing is not one "at grade" within the meaning of the statute, it would follow that no authority to establish it need be granted by the Public Service Commission. Cf. *L. & N. R. R. Co.* v. *Public Service Comm.*, *supra*.

The Public Service Commission had no authority to make any order with reference to the cost of raising the railroad embankment and relaying the tracks, and

2. See Burns' 1949 Repl., §36-119.

it properly refused to do so. Whether, under the police power and applicable statutory provisions the company may be compelled to construct and maintain a crossing made necessary by the establishment of a new highway across its right of way, is a question we do not consider as being presently before us. We, therefore, do not discuss it further than to point out that the company's objection to the order was based largely upon the premise that it could and would be required to do so at its own expense.

By appropriate pleadings the appellee challenged the feasibility of the establishment of the highway as planned. It asserted that the crossing, as planned and designed by the State Highway Commission, was unreasonable in that it placed unjust, unreasonable and unnecessary burdens upon the company which could be obviated by a change of plans, without detracting from the public safety or convenience in any way, and that it authorized the establishment of a crossing in a manner that would unnecessarily, unreasonably and unlawfully subject the company to costs, damages and expenses in the sum of more than $20,000 notwithstanding the fact that such crossing could be made to conform to the established grade of the tracks without in any manner affecting or detracting from the safety or convenience of the traveling public.

There was evidence to the effect that the highway was designed to cross the right of way at an elevation seven feet higher than the established grade of the railway because of soil conditions; to make possible the proper and safe grading of back slopes; the possibility of the inundation of the road at a lower level based on past experience; and to avoid excessive grades in the future construction of ramps leading from such

highway to a contemplated new highway overpass approximately 600 feet west of the proposed crossing.

On the other hand there was evidence that the present elevation of the tracks was safely above high water, and in any event an increase of much less than seven feet would be sufficient to eliminate the danger thereof; that a short distance either side of the proposed crossing the highway as planned is several feet lower than at the point of intersection, although the road at such points would be subject to the same high water conditions it would be subject to at the point of intersection; that soil conditions were not such as to necessitate the planned elevation; that danger from soil and snow slides would be non-existent even if the crossing were placed at the present grade of the railroad; and that the highway, if properly engineered, could as well be placed at a lower level than planned so far as the construction of ramps to the overpass was concerned.

The Public Service Commission found the facts as follows:

"The Commission, having examined the petition, having heard the evidence and oral argument by Counsel for Petitioner and Respondent, and being duly advised in the premises, is of the opinion and now finds that the traffic is heavy in this vicinity and that the consolidation of State Roads Nos. 24 and 30 over this proposed highway will help to eliminate congested traffic in and near Fort Wayne, Indiana, and that the proposed highway project will be in the interest of and for the convenience and safety of the traveling public and will expedite the smoother flow of traffic in this vicinity. That the easing of congested traffic is in the interest of the public safety and welfare and is a necessary and useful project for the public welfare as a whole, and that the prayer of the petition should be approved and granted and it will be so ordered."

As above stated, the Public Service Commission is required, in an adversary proceeding, to make its orders upon the facts found by it. This was an adversary proceeding. The finding of facts is preceded by a short and incomplete recital of some of the evidence. No reference is therein made, however, to any of the evidence above mentioned, and if it were, we could not weigh it for the purpose of determining what the factual situation actually is. That duty rests upon the Commission. As said in *St. Joseph Stock Yards Co.* v. *United States* (1936), 298 U. S. 38, 51, 56 S. Ct. 720, 725, 80 L. Ed. 1033:

> ". . . The court does not sit as a board of revision to substitute its judgment for that of the Legislature or its agents as to matters within the province of either. (Citing authorities.) When the Legislature itself acts within the broad field of legislative discretion, its determinations are conclusive. When the Legislature appoints an agent to act within that sphere of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specifically applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily. (Citing authorities.) In such cases the judicial inquiry into the facts goes no further than to ascertain whether there is evidence to support the findings, and the question of the weight of the evidence in determining issues of fact lies with the legislative agency acting within its statutory authority."

The order of the Commission must be founded upon facts found by the Commission based upon substantial evidence. *Kosciusko County, etc.* v. *Public Service Comm., supra; State Board of Medical Registration, etc.* v. *Scherer* (1943), 221 Ind. 92, 46 N. E. 2d 602; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Board of Medical Regis-*

*tration and Exam.* v. *Moore* (1947), 224 Ind. 621, 70 N. E. 2d 354. "These facts should be found specially and not generally. The findings must be specific enough to enable the court to review intelligently the Commission's decisions. *Atchison, T. & S. F. Ry. Co.* v. *Commerce Commission* (1929), 335 Ill. 624, 167 N. E. 831." *Kosciusko County, etc.* v. *Public Service Comm.,* *supra,* at p. 674. As said in *Wichita Railroad & L. Co.* v. *Public Utilities Commission* (1922), 260 U. S. 48, 43 S. Ct. 51, 67 L. Ed. 124, and quoted with approval in *Kosciusko County, etc.* v. *Public Service Comm.,* *supra:*

> "In creating such an administrative agency, the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined, and show a substantial compliance therewith, to give validity to its action. When, therefore, such an administrative agency is required, as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective."

As stated in Davis on Administrative Law, §162, commencing on p. 526:

> ". . . (T)he practical reasons for requiring administrative findings are impressive. Both legislatures and courts have seen fit to impose the requirement, the courts sometimes interpreting or purporting to interpret statutory provisions and sometimes creating common law. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction."

The Commission found that the traffic is heavy in the vicinity; that the new construction will help eliminate congested traffic in and near Fort Wayne and will expedite the smoother flow of traffic in that vicinity. That portion of the finding which recites that the project is a necessary and useful one for the public welfare as a whole, and that it will be in the interest of and for the convenience and safety of the traveling public is a conclusion drawn by the Commission. It is not a finding of facts upon which an order could be based. *Kosciusko County, etc.* v. *Public Service Comm., supra.*

The statute (Burns' 1951 Repl., §54-429, *supra*), provides that the order of the Public Service Commission may be challenged in an action to set it aside for the reason, among others, that it is unreasonable and unlawful. It seems too obvious to require elaboration that the construction of this project as planned is not necessarily reasonable and lawful even though traffic is heavy in the vicinity, and the new construction will help to eliminate congested traffic and expedite the smoother flow thereof. It might well be that the elimination of traffic congestion and the expedition of the smoother flow of traffic would promote the safety and serve the convenience of the general public, yet the establishment of the project as planned might at the same time be arbitrary, capricious, confiscatory, unreasonable and unlawful. Although the primary interest to be considered is the public interest, fairness to those regulated is a factor in the general welfare. The findings do not concern themselves in any way with the real question presented. They avoid, or at least ignore, the actual controversy, for the company did not deny the advantages that would flow to the public from the construction of the project as planned.

It insisted that equal advantages would flow to the public, without harm to the company, if the project were so engineered that the highway crossed the railway at the established grade of the railway. No facts whatever are found, either evidentiary, basic, or ultimate, from which the court could determine whether the order is reasonable and lawful on the basis of the issues presented and the evidence adduced. We must conclude, as did the trial court, that the order of the Commission is not based upon appropriate findings of fact.

The trial court erred in holding that the order of the Commission was one which it had no authority to make; it correctly held that the finding of facts was insufficient. The judgment vacating and setting aside the order of the Commission is affirmed and the cause is remanded to the trial court with instructions to in turn remand to the Commission for further proceedings not inconsistent with the views herein expressed.

Gilkison, J., dissents with opinion.

### DISSENTING OPINION

GILKISON, J.—I cannot agree with the majority in this case. I think the complaint for review should have been filed and the appeal should have been taken agreeable with §55-112 Burns' 1951 Replacement, Acts 1913, ch. 306, §1, p. 820. Since the grade crossing matter involved, has to do only with a railroad company and has nothing to do with any utility, it comes under the jurisdiction of the Public Service Commission only by the transfer of the duties of the Railroad Commission to the Public Service Commission by §54-107 Burns' 1951 Replacement, Acts 1913, ch. 76, §4, p. 167, which provides that the powers so transferred "shall be held and exercised by them under the laws heretofore in force."

§55-112 Burns' 1951 Replacement, *supra*, was enacted at the same session of the legislature as the act transferring the duties of the Railroad Commission to the Public Service Commission, and the two acts are necessarily *pari materia*.

Section 54-429 Burns' 1951 Replacement was enacted at the 1929 session of the legislature (Ch. 169, §1, p. 530) and by its terms is limited to the Public Service Commission's "utility" jurisdiction. As I view it, this statute just cannot apply to appeals from the Public Service Commission in its jurisdiction of matters under the Railroad Commission laws. As to matters arising under this jurisdiction, appeals must be taken under §55-112 Burns' 1951 Replacement, *supra*.

I would reverse the judgment for this error.

NOTE.—Reported in 111 N. E. 2d 719.