NEW YORK CENTRAL RAILROAD COMPANY
*v.* HOLLAND ET AL.

[No. 19,431.   Filed March 20, 1962.]

*Marvin A. Jersild,* of Chicago, Illinois, *Owen W. Crumpacker, Theodore M. Gemberling, Lowell E. Enslen,* and *Crumpacker, Gemberling & Enslen,* of Hammond, for appellant.

*Frank L. Harlor,* Assistant Public Counselor, for appellees.

GONAS, J.—A group of sixteen citizens, named appellees, filed a petition with the Public Service Commission praying for an order that appellant railroad install a flagman, an automatic gong or bell, or other

automatic device at its crossing at Pike Street in East Gary, Lake County, Indiana, pursuant to Burns' Stat. §§55-2016; 55-2019. Burns' Stat. §55-2016 provides:

> "The Public Service Commission of Indiana is hereby authorized and empowered to require that all persons, firms or corporations owning or operating any railroad or interurban railroad within this state shall, at all public crossings where the view of approaching trains is obstructed, if said persons, firms or corporations are unable to remove said obstructions as herein provided, equip such public crossings with a flagman or an automatic gong or bell so as to warn the traveling public of an approaching car or train."

The legislature has authority to impose upon the corporation without its consent, and even against its protest, such obligations as will enable it to perform its public functions.

A railroad company is a quasi-public corporation, private in the ownership of its stock, but public in the nature of its duties. One of the duties imposed upon a railroad is that it shall equip public crossings with a flagman or an automatic gong or bell if required to do so by the Public Service Commission, pursuant to statute cited on page one. Burns' Ind. Stat. §54-112 provides that:

> "The Commission created by this act (§§54-102, 54-109—54-120) shall in all controversial proceedings heard by it be an impartial fact finding body and shall make its orders in such cases upon the facts impartially found by it."

It is conceded that appellant by devoting its property to the public, and by putting it in the service of the public, thereby, subjected it to the regulation of the legislature and control of its administrative body

to the same extent as other public common carriers are controlled.

The facts should be found specially and not generally, and the findings must be specific enough to enable the court to review intelligently the Commission's decision. *Pub. Serv. Comm. v. Ft. Wayne U. Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 94 N. E. 2d 753; *Indianapolis & Southern Motor Express, Inc. et al.* v. *Public Service Commission of Indiana et al.* (1953), 232 Ind. 377, 112 N. E. 2d 864; *Pub. Ser. Comm. et al., etc.* v. *Ind. Bell Tel. Co.* (1955), 235 Ind. 1, 130 N. E. 2d 467, (Rehearing denied, 1956). The finding should state the "essential basic facts." *Gen. Tel. Co. etc.* v. *Pub. Serv. Comm. of Ind. et al.* (1958), 238 Ind. 646, 150 N. E. 2d 891, Rehearing denied 154 N. E. 2d 372.

After the hearing which was conducted in East Gary, Indiana, the Commission entered several purported findings. Said findings are as follows, to-wit;

"1. That this matter was instituted by Denis J. Holland and more than five citizens of Indiana, under and pursuant to the statutes of Indiana; that said petition is regular in form and contents and signatures;

2. That Respondent Railroad is a common carrier of freight and passengers, engaged in intrastate commerce in and through Lake County, Indiana; that Respondent's said railroad runs generally in a west-east direction through its grade crossing with Pike Street in East Gary, Indiana, — which Pike Street runs north-south and passes through said crossing;

3. That said crossing of Respondent's north line of railroad tracks (6 tracks) is elevated some 4 or 5 feet above the base of the road, which, in itself, creates a dangerous condition, particuarly when considered in connection with the approach - from Marquette Street, the parked train

cars and/or trains on other lines; that the view of the said railroad grade crossing is 'obstructed' approaching from each direction;

4. That there are some 18, more or less, Respondent trains daily that use this crossing, some of which proceed as much as 35-40 miles per hour; that a train speeding 40 miles per hour covers a distance of 66 feet per second, while one proceeding at 35 miles per hour covers a distance of 52 feet per second, that, while the accident record at this crossing has been relatively good, considering the speed of the trains, number of trains, the elevated tracks and embankments, and the public use of same, there have been a number of accidents and probably one or more fatalities, although the posting of a guard by the town at this crossing has materially reduced the danger when he is on duty.

5. That this Commission is legally constituted, competent authority for insuring the public safety at all railroad crossing of streets and highways generally in Indiana, and specifically in this cause, (*Pennsylvania-Reading Seashore Lines* v. *Public Utility Commissioners* (1951), 13 N. J. Super. Ct. 540, 81 A. 2d 28);

6. That, in exercising its power to regulate grade crossings in the interest of the safety and health of the public, the Commission, of necessity, possesses broad discretion in determining what the public welfare and interest requires (*Commerce Commission* v. *N. Y. C. R. R. Co.* (1947), 398 Ill. 11; 75 N. E. 2d 411);

7. That the exercising of the power to require adequate warning signals (whether to be operated by electricity or by watchman) is not confiscation of property nor the denial of equal protection of law nor deprivation of the rights of property without due process (*Pennsylvania-Reading Seashore Lines,* v. *Public Utility Commissioners, supra*);

8. That the expense of providing proper and sufficient crossing devices and appliances at rail crossing doubtless must have been considered and contemplated by the railroad and taken into account when it accepted the privileges and

franchise granted it by the state, such expense being an incident to the functioning of the police power of a state (*Pennsylvania-Reading Seashore Lines* v. *Public Utility Commissioners, supra*) ;

9. That to require either the maintenance of a flagman or an electrically operated flasher signal device at a dangerous crossing is not a burden upon interstate commerce so as to be invalid, (*Nashville C. & St. L. R. Co.* v. *White,* 278 U. S. 456; 73 L. Ed. 452) ;

10. That the petitioners' witnesses based their testimony upon normal visual observation extending over a period of months or years, experienced while living in the vicinity of the rail crossing involved here; that, in relation to this crossing these witnesses gave their mental impressions obtained at various times under changing conditions and positions, that the inevitable conclusion to be drawn from such testimony is, and this Commission so holds, that this crossing is obstructed, is dangerous, is insufficiently protected by present and existing warning signals and signs, that the protection needed there is either a crossing-flagman or an automatic electric warning signal which can be easily seen by all;

11. That the evidence shows and this Commission finds with petitioners on their petition and that the public safety and welfare will be best served by the granting thereof; that Respondent Railroad should provide at said crossing a flagman, or, in lieu thereof, such other protective devices as are hereinafter provided, and it will be so ordered.

IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA, that the Respondent Railroad be and the same is hereby ordered and directed to provide a flagman at its Pike Street crossing in East Gary, Lake County, Indiana.

IT IS FURTHER ORDERED that, at the election of said Respondent, the installation of standard automatic flasher lights will be deemed compliance with such order and a satisfactory subsitu-

tion for the provision of the flagman above ordered.

IT IS FURTHER ORDERED that said New York Central Railroad Company shall notify this Commission in writing within thirty (30) days of the election as to the installation of standard flasher lights; that if no election is made this order shall become effective at the end of thirty (30) days and that a flagman shall be immediately provided; that if election to install said flasher lights is made, said flasher lights shall be installed on or before April 30, 1960, pending which installation no flagman shall be required.

IT IS FURTHER ORDERED that said Respondent Railroad shall pay into the Treasury of the State of Indiana, through the Secretary of the Commission, the sum of $11.24, within twenty (20) days from the date of this order, such being expense incurred in legal advertising in this matter."

The New York Central Railroad Company filed a motion for a rehearing which the Commission overruled.

Thereafter, appellant filed its Assignment of Errors and Transcript in this court under Rule 2-14. The Assignment of Errors reads, omitting formal parts, as follows;

"(1). The decision, ruling and order of the Public Service Commission of Indiana is contrary to law.

(2). The order on motion for rehearing is contrary to law."

The order by the Commission on appellant's petition for a rehearing did not modify or amend its original order. Burns' Ind. Stat. Anno. §54-444, 1961 Pocket Suppl. ;

". . . and the decision of the Commission on said petition (petition for re-hearing) shall not be as-

signed as error unless the final decision, ruling or order of the Commission is modified or amended thereby, without further hearing ordered."

Appellant's Assignment of Error #2 presents no question. The Assignment of Error that the decision, ruling and orders of the Public Service Commission of Indiana is contrary to law, is sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered. Burns' §54-443 (1961) Pocket Suppl.

The court, on appeal, is not only concerned with the fairness or unfairness of the case, but with the correctness.

The record may reveal that the crossing in question is a dangerous crossing and in such condition as to demand additional protection prayed for in appellees' petition for construction of an electric warning signal, gong or bell. However, notwithstanding our inclination, we are bound by the recent ruling of our Supreme Court in the case of *Monon Railroad* v. *Public Service Commission,* (1960), 241 Ind. 142, 170 N. E. 2d 441.

There was no finding as to whether the appellant railroad is or is not able to remove any obstruction to the view. Our Supreme Court has recently considered the effect of the lack of such a finding in a proceeding brought under the same statute as that involved here and held such a lack to be fatal to the order of the Commission. *Monon Railroad* v. *Public Service Commission, supra.*

In its finding No. 3 the Commission stated, "that the view of the said railroad grade crossing is 'obstructed' approaching from each direction." This is

simply a conclusion from the evidence. There are no findings of fact upon which the conclusion could be reached. We are unable to determine from the findings what the Commission had in mind as constituting an obstruction of the view, whether it is weeds, a line of telephone poles, buildings which are located some distance from the crossing, railroad cars which are left standing near the crossing, or some other object or objects.

The order is reversed and proceedings remanded with instruction to make a special finding of facts, and for further proceedings not inconsistent with this opinion.

Kelley, P. J., Myers, Pfaff, Bierly and Cooper, JJ., concur in result.

Ryan, C. J., dissents.

Ax, J., dissents with opinion.

### DISSENTING OPINION

Ax, J.—I would dissent from the majority opinion. It is apparent from a review of the evidence that the Public Service Commission was right in its finding and conclusion that the view at the crossing was obstructed. The evidence clearly shows that it is an extremely dangerous crossing, and in its Finding No. 10, the Commission found from the evidence "that the crossing is obstructed; is insufficiently protected by present and existing warning signals and signs; that the protection needed there is with a crossing-flagman or an automatic warning signal which can easily be seen by all."

In cases affecting the lives and general welfare of the public such as the one before this Court for review, I do not believe that this Court should blindly shut its

eyes to what the evidence shows and require the case to be remanded to the Commission to ask it to perform an utterly unimportant technical task of setting forth the actual obstruction to this crossing when it is so apparent from the evidence that the view is obstructed because of the elevated approach to the tracks and because of the switching and storage of cars on the tracks at this multiple track crossing. It is a matter of common knowledge that the railroad could of course move all of the standing or stored cars from the tracks—but it is also a matter of common knowledge that where railroads use multiple tracks for storage and switching purposes, there are necessarily times when such switching or storage of cars will obstruct the view of the public to the remaining tracks.

To do what the majority opinion would require to be done could cause many additional months of delay in providing protection to the public in the case of this crossing which the evidence in this case so overwhelmingly indicates is so sorely needed. By reason of the technical holding of the majority opinion, lives could be lost pending the ultimate outcome of this case, which from the evidence, could only ultimately result in the same conclusion reached by the Commission in this case, unless the appellees, fighting for the general welfare of the public are finally exhausted by all of the long technical proceedings in this case, and consequently determine that there is no point in proceeding further.

There are times when it is important that both this Court and the Supreme Court should be able to separate the "wheat from the chaff." This case before us indicates to me that this is a proper time.

Since the Supreme Court has determined that this Court is a "review" court over the orders of the Public Service Commission, I would in the case before us after reviewing the evidence, affirm the order of the Public Service Commission.

NOTE.—Reported in 180 N. E. 2d 770.