**KENAI PENINSULA BOROUGH, Appellant,**

v.

**Clarence RYHERD, Appellee.**

**No. 3635.**

Supreme Court of Alaska.

May 22, 1981.

3. *See* 20 U.S.C. § 1415.

Andrew R. Sarisky, Soldotna, for appellant.

Albert Maffei, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

In this case the Kenai Peninsula Borough Planning Commission sitting as a platting board disapproved a plat submitted by Ryherd. This disapproval was affirmed by the Borough Assembly sitting as a board of adjustment. On appeal from the decision of the Assembly the superior court reversed and remanded the case to the Assembly for remand to the Commission with directions to approve the plat. The Borough has appealed from the order of the superior court. We agree with the superior court that a remand is necessary, but we conclude that the court erred in directing the approval of the plat.

### STATEMENT OF FACTS

The subdivision in question is called River Vista Subdivision. It is located within the City of Soldotna adjacent to the Kenai River. It consists of five blocks each of which roughly parallels the river; Block 5 is on the river bank and Block 4 abuts a high water slough. Ryherd proposed to dredge the slough and convert it into a private small boat harbor. According to the plat the 12 lots of Block 5, the 9 lots of Block 4, and a part of each of 7 lots of Block 3 lie within the flood plain of the Kenai River.

The preliminary plat of River Vista Subdivision was submitted by Ryherd on July 1, 1975. With his submittal Ryherd noted that "Blocks 4 and 5 are intended for recreational use only, with no sewage disposal on the lots (chemical toilets or similar containers only)." The plat was first considered by the Planning Commission on July 7, 1975 and tabled at that time. At the July 7 meeting Ryherd stated that providing city water and sewer to all of the subdivision was not monetarily feasible. On July 21, 1975, the Planning Commission gave preliminary approval to the subdivision subject to, among other things, the recommendations of the City of Soldotna, obtaining required permits prior to the development of the boat harbor, and "The Kenai Peninsula Borough Planning Commission policy concerning the Alaska Department of Environmental Conservation Wastewater Disposal Regulations."

On February 17, 1976, Ryherd submitted a plat of Blocks 4 and 5 of the subdivision which he designated as River Vista Subdivision No. 1 for final approval to the Borough Planning Commission. The Commission disapproved the plat on February 23. According to the minutes of the meeting of that date, when the Planning Commission voted its disapproval Mr. Ryherd asked the Commission what its reasons for denial were so he could possibly cure them. The minutes reflect that after this request the following transpired:

Chairman Dimmick stated one reason was the 40 foot boat harbor easement and that the land was in the flood plain.

Commissioner Palm stated his reason was due to the low lying ground.... Mr. Best [Planning Director] added that

another reason for the denial could be the lot sizes within such low lying ground.

Mr. Ryherd stated that he had gone to the Department of Environmental Conservation and the plat was approved with certain restrictions and had received a letter from them.

Mr. Best stated the Borough has two letters on filed from the Department of Environmental Conservation, dated July 30, 1975, and September 2, 1975, neither of which approves Blocks 4 and 5 of the plat. Mr. Best asked Mr. Ryherd if the Borough could have a copy of the letter he received from the Department of Environmental Conservation.

On March 1, 1976 Ryherd again sought final approval of the plat of Blocks 4 and 5. In his letter of submittal he noted that "[d]ue to the severe building restrictions on Blocks 4 and 5, dwelling construction is very unlikely in the near future. Summer recreation use of these lots is feasible, meanwhile." He submitted a letter from the State Department of Environmental Conservation, dated March 5, 1976 stating:

Although this Department is not in favor of residential development within flood plains, your proposal to provide public sewer and water to this subdivision, so stated in the restrictions noted in the plat, satisfies the current waste water regulations.

We will, however, require engineering plans on the sewer and water system be submitted to this office prior to their construction. Dwellings should also be constructed to withstand possible flooding.

The Commission met to consider Ryherd's renewed application on March 15, and again failed to approve the plat. Two of the members in the majority stated their reasons which are reflected in the following excerpt from the minutes:

Commissioner Palm stated he objects to the plat as the ground is low and even with the restrictions on the plat, there is actually no one to police the area nor enforce the restrictions.

Clarence Ryherd stated the purchasers of the lots will police their own areas.

Commissioner Palm stated he did not believe this would work as the owners would probably be weekend recreationists and would leave the area after the weekend leaving litter and garbage.

Commissioner Amundson believed that the lots were too small for the soil conditions and did not feel it was a good design.

Ryherd appealed the Planning Commission's decision to the Borough Assembly sitting as a board of adjustment. The Assembly heard the appeal on April 6, 1976. At this hearing Mr. Ryherd, his attorney and his surveyor made statements as did Mrs. Dimmick, Planning Commission Chairman and Mr. Best, Planning Director. The statements of the surveyor, Mr. Parker, and Mrs. Dimmick are relevant to this appeal. As reflected in the minutes, they said:

Mr. Charles Parker, surveyor for the subdivision, believed the Commission has acted in an "arbitrary and capricious" manner by approving the preliminary plat and then rejecting the final. If it conforms to the requirements placed on it on approval of the preliminary, how can it now be rejected he asked. If this appeals board does not approve it who will compensate the subdivider for expenses incurred for proceeding in good faith to develop the land per the Commission's conditions. He said Chairman Dimmick stated when the plat was rejected it was because of the plan for a boat canal and that it was partially in the flood plain which was clearly indicated on the plat which was approved last July. All other arguments against it are considerations which should have been handled at the preliminary, not final stage.

Mrs. Dimmick, Planning Commission Chairman, conceded these things should have been dealt with earlier. She believed at that time it was felt the technical requirements had been met, there were a number of permits to be obtained which probably wouldn't be granted. The Commission is faced with a growing number of subdivision requests on mar-

ginal land. The ordinance needs to be updated. The pressure from the increase of new subdivisions is tremendous, it has increased 100% in the last year. The Commission is concerned mainly with whether any new project is good planning. State agencies which have held to strict requirements in the past are now approving without careful consideration. The Commission feels the points of concern are still a problem; the lots are small, the canal will likely not be maintained, restriction on the plat will protect the subdivider, but possibly not the Commission. The first finished floor on the lower level dwellings would have to be 9 to 11 feet above the ground.

The minutes also note the following:

In further discussion it was brought out the homes where flooding was a possibility were strictly summer homes, and that there had been many changes in the membership of the Commission since July, when the first approval was given.

The Assembly thereupon denied the appeal.

On appeal to the superior court the case was submitted on briefs prepared by the parties based on the administrative record. The rationale of the trial court is reflected in the following extract from the court's written decision:

From the minutes of the platting board meeting of February 23, 1976, it is impossible to determine if the platting board confined its consideration of the platting question to platting matters or if planning, zoning, building code and other matters were not the prime consideration.

It is clear that the board of adjustment did not articulate any reasons for disapproval of the plat and that no plat and that no platting considerations were presented in justification of disapproval except for the statement by Mrs. Dimmick that the lots are small.

After quoting the statement of Mrs. Dimmick as reflected in the minutes of the Assembly meeting of April 6, 1976, quoted above, the court continued:

There is no substantial evidence in the record to support the platting board and the board of adjustment's decision to disapprove the plat. Therefore the decision to disapprove the plat cannot be upheld. *Keiner v. City of Anchorage*, 378 P.2d 406 (Alaska 1963). If the test was the reasonable basis standard enunciated in *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971), I would find that the platting board and board of adjustment had abused their discretion, inasmuch as there is no evidence in the record to indicate that the lot size, the only platting consideration relied upon by the board of adjustment and the platting board, violated a platting rule or regulation of the Kenai Peninsula Borough. The fact that the parcel is in a flood plain and is low apparently does not preclude platting by reason of any platting rule or regulation.

### RELEVANT STATUTES AND ORDINANCES

AS 29.33.150 provided, at the times relevant herein:

*Platting jurisdiction and power.* The planning commission acting as the platting board has jurisdiction over platting and shall adopt and publish rules and regulations to implement this power. Jurisdiction includes, but is not limited to, the control of

(1) form, size, and other aspects of subdivisions, dedications, and vacations of land;

(2) dimensions of lots or tracts;

(3) street width, arrangement, and right-of-way, including allowance for access to lots and installation of street paving, curbs, gutters, sidewalks, sewers, water lines, drainage, and other public utility facilities and improvements.

AS 29.33.160(a) provided, at the times relevant herein:

(a) *Procedure.* The platting board shall within 60 days of filing approve or disapprove the plat or shall return it to the applicant for modification or correction. If the board fails to act, the plat is considered approved and a certificate of approval shall be issued by the board on

demand. The applicant for plat approval may consent to the extension of the period for action by the board. The board shall state on its record and in writing to the applicant its reason for disapproval of a plat.

AS 29.33.245 provides:

*Delegations.* The assembly may by ordinance authorize the planning commission, the platting board and the board of adjustment to delegate powers to hear and decide cases under this chapter in a manner authorized by the ordinance, including but not limited to delegations to one or more members of the commission or board, to other boards or commissions, or to a hearing officer designated by the commission or board. The assembly shall prescribe procedures for hearings and appeals. The commission or board shall hear and decide appeals de novo.

AS 29.33.080(b)(3) provides that the Planning Commission shall prepare and recommend to the Assembly, among other things, a subdivision ordinance.

The subdivision ordinance of the Kenai Peninsula Borough is contained in Title 20 of the Code of Ordinances of the Borough. The first section of Title 20 states the purpose of the ordinance:

The purpose of this title is to promote an adequate and efficient street and road system, to provide utility easements, to provide minimum standards of survey accuracy and proper preparation of plats, and to protect and improve the health, safety and general welfare of the people. KPB § 20.04.010.

KPB 20.12.010 describes the purpose of the preliminary platting process:

*Preliminary discussion—purpose.* A. The purpose of the preliminary plat process is to enable the subdivider to discuss his preliminary studies and the layout with the planning director, or the director's designee, in order to:

(1) facilitate the preparation of the required plans and plats in accordance with his title;

(2) to avoid unnecessary delay and expense; and

(3) to give the planning commission and the planning director ample time to study the proposed subdivision and its relation to the overall needs of the Kenai Peninsula Borough and its residents.

KPB 20.12.090 describes the effect of approval of a preliminary plat:

Approval of the preliminary plat shall not constitute approval of the final plat, but means only that the basic lot and street design is acceptable. The subdivider is on notice that it is his responsibility to provide all the information required in this ordinance and to prepare a correct final plat.

KPB 20.16.170 concerns approval of a final plat. It provides:

*Approval—Authority—Certificate issued when.*

A. The commission shall approve, modify or disapprove the final plat of subdivision or dedication within 56 days after the date of receipt of the final plat and shall transmit to the subdivider a copy of the minutes containing the commission's action and the commission's official statement of findings and reasons for any denial or modification. The commission shall not approve a final plat which does not meet the requirements of the ordinance or deviates in any significant way from the preliminary plat as approved. If the commission modifies or denies a final plat, the commission shall note in its motion those sections of this title with which the proposed final plat does not comply and the grounds for finding noncompliance. Where appropriate, the planning commission may adopt as its statement of findings justifying denial of a final plat the findings of the pertinent staff report transmitted to the planning commission by the planning director.

B. If not acted upon within 56 days from the date of receipt, the plat shall be deemed to have been approved and a certificate to the effect shall be issued by the commission on demand; provided, however, that the applicant for plat approval may consent to the extension of such period.

C. Upon approval of a final plat, by the planning director or planning commission, the applicant shall present the original plat for signature of the planning director or mayor within one year of such approval. Failure to adhere to the time limits of this section shall void the final approval of the plat.

D. When signed by the mayor or planning director, the original shall be filed with the district recorder within 5 working days by the director or surveyor. KPB 2.40.080 provides, in pertinent part:

D. If on appeal the planning commission acting as platting board fails to approve a plat, further appeal may be taken to the assembly of the Kenai Peninsula Borough, provided written notice thereof is filed with the borough clerk within 10 days after applicant is notified of the adverse decision of the planning commission by personal service or certified mail.

E. Where a decision failing to approve a plat is appealed to the borough assembly, the case on appeal shall be heard de novo.

### THE REQUIREMENT OF A STATEMENT OF REASONS

■ The basis for the trial court's decision is that the Assembly did not articulate any reasons for disapproval of the plat. There is no statute or ordinance requiring the Assembly to explain its action in these circumstances. However, the trial court's conclusion is consistent with previous decisions of this court.

Thus in *Mobil Oil Corp. v. Local Boundary Commission*, 518 P.2d 92, 97 n. 11 (Alaska 1974), we stated:

We recognize that in the usual case findings of fact would be required even in the absence of a statutory duty in order to facilitate judicial review, insure careful administrative deliberation, assist the parties in preparing for review, and restrain agencies within the bounds of their instruction. *See* 2 K. Davis, Administrative Law Treatise § 1605 at 446–48 (1958).

In *Moore v. State*, 553 P.2d 8, 36–37 (Alaska 1976), at issue was a statute requiring the Director of the Division of Lands to find that the interests of the State would be best served by a proposed land disposition before making the disposition. We held that although the Director was not expressly obligated to make a formal written finding, at a minimum he was required to establish a record which reflected the basis for his decision. We noted that the purpose of this requirement would be "to ensure that [the decision] was not arbitrary, capricious, or prompted by corruption." *Ibid.* n. 20.

The administrative action taken in *Moore* was informal, not adjudicative. Here, by contrast, the proceeding was of a formal and adjudicative character. In such cases findings and reasons have with near uniformity been required in other jurisdictions, *see* K. Davis, Administrative Law Treatise § 1605, 444 (1958), while in cases such as *Moore* involving informal administrative action, more varied results have been reached. *See* K. Davis, Administrative Law of the Seventies § 1600–9, 139–41 (1977 Cum. Supp.). We, therefore, have no hesitation in concluding that the superior court was correct in finding that the Assembly's action was defective because of the absence of a statement of reasons.

■ With respect to the actions of the Commission there is a specific requirement. It is imposed by AS 29.33.160(a) which states in relevant part:

The board shall state on its record and in writing to the applicant its reasons for disapproval of a plat.

Section 20.16.170(a) of the Kenai Peninsula Borough Ordinances elaborates on this requirement:

If the commission modifies or denies a final plat, the commission shall note in its motion those sections of this title with which the proposed final plat does not comply and the grounds for finding noncompliance. Where appropriate, the planning commission may adopt as its statement of findings justifying denial of a final plat the findings of the pertinent staff report transmitted to the planning commission by the planning director.

In this case the planning commission complied with the statute, at least minimally. It delivered to Ryherd a form entitled "Notice of Planning Commission Action" referring to the meeting of February 23, 1976 which stated:

The final or preliminary/final plat has been: ... disapproved for the reasons listed in the attached minutes.

Attached to the form were the minutes of the meeting and included in the minutes were reasons given by two of the Planning Commissioners for their opposition to the plat as well as the statement of the Planning Director.[1] A similar practice was followed with respect to the March 15, 1976 Planning Commission meeting at which the plat was again disapproved.

However, the Planning Commission did not comply with that portion of the ordinance which requires that the Commission note those sections of the subdivision ordinance on which the Commission is basing its action. Thus, the Planning Commission's conduct was also defective.

█ In our view, the appropriate remedy in this case is to remand the case to the superior court with directions to remand the case to the Planning Commission. That is the course of action typically followed where an agency which has a duty to make written findings and conclusions has failed to do so. *See, e. g., Public Service Commission v. Fort Wayne Union Railway Co.*, 232 Ind. 82, 111 N.E.2d 719 (1953); *Society for Protection of New Hampshire Forests v. Site Evaluation Committee*, 115 N.H. 163, 337 A.2d 778 (1975); *Abbotts Dairies, Inc. v. Armstrong*, 14 N.J. 319, 102 A.2d 372 (1954); *State Board of Equalization v. Kansas-Nebraska Natural Gas Co.*, 457 P.2d 963 (Wyo. 1969). In view of the considerable delay which has taken place since the Commission's last action, the Planning Commission should be instructed to hold an additional hearing, the proceedings of which should be recorded, on the request for final approval. If the Commission determines that denial is appropriate it should express its reasons and the underlying findings on which those reasons are based and, as required by the ordinance, it should cite the sections of the ordinance on which it relies. If the Commission determines that the plat should be approved, it should grant approval and express its reasons for that action.[2]

---

1. The relevant portion of the minutes is set forth on pages 558–559 of this opinion.

2. A majority of the court believes that the question whether under the existing ordinance the Commission had authority to reject a subdivision because it is located in a flood plain need not be discussed. While entertaining serious reservations as to whether such authority exists as the ordinance is now drawn, the majority believes that a discussion of the point is unwarranted because it is not central to the case and would be merely advisory, and because it is not adequately briefed by the parties.

The author of the opinion believes that the point should be reached, and, while the ordinance could be made more explicit, that there is authority under the ordinance for denying subdivision requests for lands located in a flood plain where there is a substantial showing that permitting the subdivision would pose significant health or safety hazards. One of the express purposes of the subdivision ordinance is to "protect and improve the health, safety and general welfare of the people." KPB 20.04.010. I view this clause as an implied grant of authority to the Commission to consider health and safety matters. It is conceivable that permitting a residential subdivision in a flood plain would pose significant health or safety problems. Therefore, I believe that the Planning Commission could conclude on a proper record that locating a residential subdivision in an area known to be particularly susceptible to flooding would pose such a significant health or safety problem that the plat proposed for such an area should not be approved.

The authorities from other jurisdictions are divided as to whether a planning commission may disapprove a plat for general health and safety reasons. Authorities denying that power include *Snyder v. Owensboro*, 528 S.W.2d 663 (Ky.1975) and *Pieper v. Planning Board of Southborough*, 340 Mass. 157, 163 N.E.2d 14 (1959). Authorities recognizing such a power include *Pearson Kent Corp. v. Bear*, 28 N.Y.2d 396, 322 N.Y.S.2d 235, 271 N.E.2d 218 (1971) and *Forest Const. Co. v. Planning and Zoning Comm'n. of Bethany*, 155 Conn. 669, 236 A.2d 917 (1967).

In *Pearson Kent* the court stated:

But the commission is not limited, in disapproving a subdivision, to an intrinsic evaluation of the subdivision itself. It may consider, among other things, the "safety" and "general welfare" of the county, including adjacent areas.

REVERSED AND REMANDED for further proceedings in accordance with this opinion.

COMPTON, J., not participating.

BURKE, Justice, dissenting.

I dissent.

According to the borough's own ordinances, when a final subdivision plat is disapproved, "The [planning] commission . . . shall transmit to the subdivider a copy of the minutes containing the commission's action *and the commission's official statement of findings and reasons for [the] denial.*" KPC § 20.16.170(A) (emphasis added). The commission is also required to "note in its motion *those sections of [the borough subdivision ordinances] with which the proposed final plat does not comply and the grounds for finding noncompliance.*" *Id.* (emphasis added). These requirements, I believe, are both procedural and substantive in nature. The procedural requirements are those requiring notice of the reasons for disapproval; they are obviously intended to inform the subdivider of what he must do in order to present an acceptable plan. The substantive requirement that I see is that the proposed plat must be approved *unless* it is found not to comply with some specific provision of the borough's subdivision ordinances. This, I believe, is reflected by the procedural requirement of notice of such non-compliance in every case where approval is denied.

In the case at bar, the planning commission largely ignored these requirements, as did the borough assembly when it heard Ryherd's application *de novo.*

Ryherd was notified, in writing, of the planning commission's disapproval of the final plat that he had submitted. Such notice, however, stated only: "Disapproved for the reasons listed in the attached minutes." The minutes attached to the notice were those of the commission's meeting at which final approval had been denied. Although they appear to reflect generally what took place at that time, including statements by several commission members of their individual reasons for voting against approval, they contain nothing that, in my opinion, could be considered an "official statement," *by the commission* of the *commission's* "findings and reasons [for] the denial." Nor do they note "those sections of [the borough's subdivision ordinances] with which the proposed final plat [failed to] comply" or any "grounds for finding noncompliance." Thus, the planning commission failed to comply with the procedural requirements of KPC § 20.16.170(A).

When the matter came before the borough assembly, a majority of the members present voted not to approve the final plat, thereby affirming the planning commission's action. Again, however, there was no compliance with the requirements of KPC § 20.16.170(A).

322 N.Y.S.2d at 236, 271 N.E.2d at 219. In *Forest Const. Co.* the court said with reference to a general regulation giving the planning commission the right to reject an application which might be "hazardous to the health and welfare" of the community,

It is unreasonable to demand detailed standards which are impracticable or impossible. . . . Although some of the standards may be general in their terms, they are reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases.

236 A.2d at 923. Antieau, has quoted the immediately foregoing statement with approval, noting:

Planning boards would be confronted with an impossible task if they were obligated to narrowly state the standards which a subdivider must comply with in order to secure plat approval.

Antieau, Municipal Corporation Law, § 8A.03, p. 8A–8 Supp. to Volume 1A (1980). I agree with this position. The ordinance could be improved by specifying and, so far as possible, quantifying, those health and safety hazards which can justify disapproval of a subdivision. However, in the final analysis, I believe that a general catch-all clause will be necessary because there are so many circumstances related to health and safety which might justify denying a particular subdivision in a particular place that it is not possible to provide with specificity for each one.

Another provision of the borough's subdivision ordinances provides that if an application for approval of a final plat is "not acted upon within [a specified number of days] of receipt, the plat *shall be deemed to have been approved and a certificate to the [sic] effect shall be issued by the commission on demand*; provided, however that the applicant for plat approval may consent to the extension of such period." KPC § 20.16.170(B) (emphasis added). I interpret the foregoing section to mean that the plat shall be deemed to have been approved *unless acted upon*, within the time permitted, *in accordance with the requirements of* KPC § 20.16.170(A).[1] In the case at bar, those requirements appear to have been violated in the following respects. Procedurally, the borough failed to give notice of the findings and reasons for the denial, notice of those particular sections of the subdivision ordinance with which the plat failed to comply, and a statement of the grounds for the finding of non-compliance. This left the subdivider with no clear indication of what he was required to do in order to present an application that would be acceptable to the borough. Substantively, there is no indication that the disapproval was based upon the plat's failure to comply with any particular provision of the borough's subdivision requirements.

Thus, I conclude that Ryherd was entitled to have his final plat "deemed approved." KPC § 20.16.170(B).

I would affirm the judgment of the superior court.

---

1. It should be emphasized that only "the *applicant* for plat approval may consent to the extension of such period." KPC § 20.16.170(B) (emphasis added).