Francis T. Murphy, Jr., J.
This is a proceeding commenced pursuant to article 78 of the Civil Practice Act to review the final order and determination of the City Rent and Rehabilitation Administration, which denied the protest of petitioner for an order of decontrol for 16 newly-created apartment units. The undisputed facts forming the background of the instant application are that petitioner purchased the premises here involved on November 20, 1961 for $20,000, which at that time were completely vacant (only one of the apartments having been occupied until the closing date and that one by the former owner). Shortly thereafter, petitioner commenced work to convert the four-story apartment building consisting of eight five-room apartments into a modern apartment dwelling pursuant to plans duly filed and approved by the Department of Buildings on October 7, 1960. At the completion of said conversion, on December 29, 1961, the landlord petitioned the Local *90 Bent Administrator for an order of decontrol of the entire 16 units, in accordance with section 11 of the State Bent and Eviction Begulations. While petitioner’s application was pending, jurisdiction over the housing accommodations was transferred from the State Local Bent Administrator to the District Bent Director of the City Bent and Behahilitation Administration. Section 11 of the State Bent Begulations was adopted essentially verbatim by the City Bent Administrator. Except for a later modification which reduced the minimum space requirement from 410 to 395 square feet, the relevant portions of section 11 remained constant during the processing of the landlord’s application. Such pertinent parts of section 11 of the Bent, Eviction and Behahilitation Begulations provide that: ‘1 The term ‘ self-contained family unit ’ shall mean a housing accommodation with private access, containing two or more rooms, consisting of at least one bedroom and a living-room dining-space area in addition to a kitchen (with cooking and refrigeration facilities and a sink), a private bathroom (with a wash basin, toilet and bathtub or enclosed shower), and at least one closet plus an additional closet for each bedroom. Such accommodation shall contain a minimum total area of 395 square feet exclusive of the area of bathrooms and closets. In lieu of a kitchen, the accommodation may include an enclosed kitchenette or an area in the living-room which is either recessed or semi-enclosed, provided that all of the above-specified kitchen facilities and equipment are within such recessed or semi-enclosed area. Where, however, the landlord establishes that either the two-room or total floor area requirement, or both, cannot be complied with because of unique or peculiar circumstances, the Administrator may waive this requirement if he finds that such waiver is not inconsistent with the purposes of the Bent Law and these Begulations and would not be likely to result in the circumvention or evasion thereof ’ ’.
In order to qualify for a waiver within the purview of section 11, the landlord, in addition to other exhibits, appended to and submitted as an integral part of its application, two affidavits, one by the architect who devised the plans for conversion of the premises under discussion and one by the engineer who supervised the construction work. Both state, in essence, that, because of the design of the original foundation, and the size of the plot in addition to other factors, the plans for conversion as adopted and carried out represent the ‘ ‘ only feasible way of conversion.”
The District Bent Administrator, and upon protest, the Bent Administrator, denied the landlord a waiver under the aforesaid *91 section. Examination of the record now before this court discloses that the only basis articulated by the rent agency for such denial consisted of a statement in the original order that “ as the landlord started the alteration after July 1, 1961 with full knowledge [of the relevant regulations] no waiver can be granted ’ ’.
Such reason within the context of the language of section 11 is at best tenuous and in its present stark form, tangential. The discretion vested in an administrative agency is not the naked, unfettered power to turn thumbs down or thumbs up. Administrative discretion must be confined within the vires laid down by the agency’s enabling statute and regulations promulgated pursuant thereto. “ That discretion " * * cannot be invoked outside the law” (Matter of Barry v. O’Connell, 303 N. Y. 46, 52 [1951]).
In actuality then, the record before this court is barren of any reason for the action taken by the Administrator. Nowhere in this voluminous mass of files is there any concrete appraisal of petitioner’s contention, supported by affidavits, that the physical specifications of the building involved precluded as unfeasible any other means of conversion, nor is there evidence of consideration of the other criteria delineated by section 11. In Lord Sumner’s famous phrase, the instant administrative record “ speaks ” only with the “ inscrutable face of a sphinx ” (Rex v. Nat Bell Liquors [1922], 2 A. C. 128, 159).
“ If the bases of an administrative decision are not articulated, it is most difficult for a reviewing court to determine whether the decision is a proper one ” (Schwartz, An Introduction to American Administrative Law, p. 166 [2d ed., 1962]). Under the circumstances of the case now before this court, the expertise required to properly weigh the technical evidence proffered by the landlord falls outside the competence of this court. Indeed, the “ silence ” of the record renders it pragmatically impossible for the court to perform its function of review.
The Administrator’s order, accordingly, cannot be sustained. In so deciding, this court is not imposing any trammels on the power of the city rent agency. No formal requirements are being demanded, nor are we indicating that the agency must set forth with artistic refinement the reasons upon which the exercise of discretion is predicated (paraphrasing Securities Comm. v. Chenery Corp., 318 U. S. 80, 95 [1942]). But “ We must know what a decision means before the duty becomes ours to say whether it is right or wrong ” (United States v. Chicago, M., St. P. & P. R. Co., 294 U. S. 499, 511 [1935], Cardozo, J.).
*92 For the foregoing reasons, this matter is remanded to respondent for further proceedings not inconsistent with this decision. In view of the above determination, the other objections raised by petitioner are rendered academic at this time and accordingly are not presently considered by this court.