TELISCHAK TRUCKING, INC., *v.*
PUBLIC SERVICE COMMISSION.

OPINION OF THE COURT.

1. CARRIERS—REGULATION—BURDEN OF PROOF—ORDERS—REASONABLE-NESS—PUBLIC SERVICE COMMISSION.

The burden of showing by clear and satisfactory evidence that an order of the public service commission under statute providing for regulation of all motor carriers for hire is unlawful or unreasonable is upon the complaining party (CLS 1961, § 479.20).

2. APPEAL AND ERROR—REGULATION OF MOTOR CARRIERS—PUBLIC SERVICE COMMISSION—STATUTES—ABUSE OF DISCRETION.

To declare an order of the public service commission made under statute regulating all motor carriers for hire unlawful, there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment.

3. CARRIERS—REGULATION—CERTIFICATE OF CONVENIENCE AND NECESSITY—INTENDED USE RULE.

Under the "intended use rule" of interpreting carrier's certificate of convenience and necessity only those commodities which

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Carriers § 28.
[2] 2 Am Jur 2d, Administrative Law § 633.
[3–6] 13 Am Jur 2d, Carriers § 77 *et seq.*
[7–11] 2 Am Jur 2d, Administrative Law §§ 456–458.

are intended at the time of movement for use in the particular type of activity, enterprise, or place specified in the description and which at the time of movement are without further processing or manufacturing in a form and condition to be so used may be transported.

4. SAME—AUTHORITY.

Authority to haul pipe and pipeline laying and construction materials, supplies, equipment and machinery, incidental to or used in connection with the construction, repairing, or dismantling of pipelines, between various points in the State *held,* not to authorize transportation of commodities requiring an intermediate manufacturing process prior to ultimate use.

5. SAME—CERTIFICATE OF CONVENIENCE AND NECESSITY—ALTERATION.

Order of public service commission that carrier cease and desist from transportation of cement except as specifically authorized in its certificate of convenience and necessity and making findings of extent of authority in certificate is not an order altering or modifying the certificate where the commission, the trial court, and the Court of Appeals have all found that the larger authority claimed by carrier is not contained in the certificate (CL 1948, §§ 479.14, 479.18).

DISSENTING OPINION.

LEVIN, J.

6. CARRIERS—CERTIFICATE OF AUTHORITY—PUBLIC SERVICE COMMISSION.

*The public service commission acts in a quasi-judicial capacity in construing a motor carrier's certificate of authority and it must state why it reached the conclusion it did, and a court on appeal decides whether the explanation is reasonable and according to the law.*

7. APPEAL AND ERROR—ADMINISTRATIVE AGENCY ORDER—GROUNDS.

*An administrative agency's order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.*

8. SAME—ADMINISTRATIVE AGENCY—GROUNDS FOR DECISION.

*A reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make,*

*must judge the propriety of such action solely by the grounds invoked by the agency.*

9. Public Service Commission—Administrative Procedure Act—Reasons for Decision.

*The public service commission is exempted from the administrative procedure act but is subject to the judicially imposed requirement that it state reasons for its decision (CLS 1961, § 24.101).*

10. Appeal and Error—Public Service Commission.

*The function of a reviewing court is to review reasons advanced by the public service commission, not to select among the competing reasons postulated or to search out a plausible basis for the commission's action.*

11. Same—Public Service Commission—Remand—Clarification of Carrier's Certificate of Authority.

*Review of public service commission order which had failed to state the reasons for its decisions as to authority conferred upon plaintiff motor carrier under its certificate should require remand to the commission for clarification of its opinion.*

Appeal from Ingham, Salmon (Marvin J.), J. Submitted Division 2 October 4, 1967, at Lansing. (Docket No. 3,068.)    Decided April 3, 1968.

Complaint by Telischak Trucking, Inc., a Michigan corporation, against Public Service Commission appealing an order of the commission requiring plaintiff to cease and desist from transporting cement, except as specifically authorized in its authority.    The Cement Carriers Association and its individual members, George F. Alger Co., L. J. Beal & Son, Inc., D. J. & Z. Trucking Co., Davis Cartage Co., Hans Vroom Cartage Co. Inc., Hess Cartage Company, James House & Sons Cartage, Mackinaw Company, Michigan Transportation Co., A. F. Posnik & Company, and Rex Transportation Co. intervened as defendants.    Affirmed.    Plaintiff appeals.    Affirmed.

*Mihelich, Elmer, Dank & Kendall,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *David P. Van Note,* Assistant Attorney General, for defendant.

*Robert A. Sullivan (Ronald J. Mastej,* of counsel) for intervening defendants.

Quinn, J. Pursuant to CLS 1961, § 479.20 (Stat Ann 1965 Cum Supp § 22.585), plaintiff filed complaint in Ingham county circuit court to appeal an order of Michigan public service commission requiring plaintiff to cease and desist from transporting cement, except as specifically authorized in plaintiff's authority.[1]

The pertinent language of the order appealed from is as follows:

"It is therefore our finding that under the portion of Telischak's authority complained of herein respondent may transport only commodities intended for use in the construction, repair and dismantling of pipelines and that *such service is restricted to service for the oil and gas industries.*

"It is also our finding that respondent may transport only commodities intended to be used directly in such construction, repair or dismantling and that such authority does not authorize transportation of commodities requiring an intermediate manufacturing process prior to such ultimate use.

"It is therefore ordered:

"(1) [This part of the order is not pertinent to decision.]

"(2) That respondent, Telischak Trucking, Inc., be and the same is hereby ordered to cease and desist

---

[1] The pertinent language of plaintiff's authority reads:

"Pipe and pipeline laying and construction materials, supplies, equipment and machinery, incidental to or used in connection with the construction, repairing or dismantling of pipelines between various points in the State of Michigan."

from the transportation of cement except as specifically authorized in its authority."

The trial court judgment affirmed the order of the commission except as to "such service is restricted to service for the oil and gas industries", and restrained the commission from enforcing that part of its order not affirmed. Under the statute cited above, plaintiff appeals such affirmance. No one appeals that part of the judgment which restrains the commission from enforcing its order restricting service to the oil and gas industries.

The proceedings before the commission which resulted in the order appealed from were instituted on complaint of intervening defendants that plaintiff was hauling illegally bulk cement from Essexville, Michigan, to Flint. The consignees in Flint were 2 Catsman companies, one of which manufactured cement pipe, among other products, but neither of which was engaged in the construction or dismantling of pipelines. Although plaintiff has other certificates of convenience and necessity specifically authorizing transport of bulk cement from Monroe county and from Wyandotte to other points in Michigan, it has no authority to haul bulk cement from Essexville to Flint unless such authority is found in the language quoted in footnote 1, *supra.* Plaintiff purchased the certificate which contains this language in 1955 but hauled no bulk cement under it until August 1963.

The statute under which plaintiff filed its complaint provides in part:

"In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be."

The Supreme Court said in *Giaras* v. *Michigan Public Service Commission* (1942), 301 Mich 262, 269:

"To declare an order of the commission unlawful there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment."

This test was reiterated in *Bejin Cartage Company* v. *Public Service Commission* (1958), 352 Mich 139, and in *City of Ishpeming* v. *Public Service Commission* (1963), 370 Mich 293. The inquiry then is, has plaintiff met the statutory burden?

Instead of advancing clear and satisfactory proof that the order complained of is unreasonable, plaintiff argues that the only limitation in its certificate is a commodity limitation and that by application of the "intended use rule" employed by the Interstate Commerce Commission in interpreting its certificates to the language of plaintiff's certificate here involved, the plain and unambiguous meaning of the latter is that plaintiff may transport commodities which are used as pipe construction materials to any point in Michigan if it is demonstrated that such materials are pipe construction materials.

Assuming that the only limitation in plaintiff's certificate is a commodity limitation, the foregoing argument fails because it ignores some essential language in the Interstate Commerce Commission's description of the intended use rule. In *Great Western Motor Lines, Inc., and Eugene G. Sharp— Investigation of Operations and Practices* (1964), 96 MCC 522, 526, the commission said:

"Basically, the test is rather simple. Commodity descriptions governed by the test are those which identify the commodities authorized to be trans-

ported by reference to their intended future use. Strictly speaking, under the test, only those commodities specified in the description which are intended, at the time of movement, for use in the particular type of activity, enterprise, or place specified in the description and *which, at the time of movement are, without further processing or manufacturing in a form and condition to be so used,* may be transported."

Here, at time of movement of bulk cement from Essexville to Flint, the commodity was not in a form for use as "pipe and pipeline laying and construction materials, supplies, equipment and machinery, incidental to or used in connection with the construction, repairing or dismantling of pipelines" without further processing or manufacturing.

In addition, a reading of all the language of the authority here in issue convinces us that the Michigan public service commission's finding that plaintiff may transport only commodities intended to be used directly in such construction, repair, or dismantling and that such authority does not authorize transportation of commodities requiring an intermediate manufacturing process prior to such ultimate use is not unreasonable, but is rather the most reasonable finding on this record.

The only possible showing that the order is unlawful is plaintiff's argument that in effect the order of the commission altered or modified its certificate and such alteration or modification is only possible by proceeding under CL 1948, § 479.18 (Stat Ann § 22.583), and the proceedings here were brought under CL 1948, § 479.14 (Stat Ann § 22.579). The argument is untenable for the reason its validity depends on the assumption that plaintiff's certificate contains authority which Michigan public service

commission, the trial court and this Court have found is not contained in such certificate.

Affirmed, with costs to defendants and intervening defendants.

McGregor, P. J., concurred with Quinn, J.

Levin, J. (dissenting). Telischak contends that the certificate of authority contains "a *commodity* description and not a job site delivery restriction," and invokes the "intended-use" test utilized by the interstate commerce commission in interpreting commodity descriptions. (Emphasis supplied.) The attorney general for the commission asserts the "findings of the defendant commission that the transportation of cement under this certificate is subject to a *construction site* limitation cannot be said to be illogical or irrational."[1] (Emphasis supplied.) The intervening defendants assert the certificate contains a "commodity description restriction and also a construction site restriction."

On appeal the circuit judge affirmed the commission on the ground that the record showed that only a portion of the cement delivered by Telischak to the consignees ultimately found its way into pipelines.[2] The majority now affirm the circuit judge on the ground that Telischak failed to advance clear and satisfactory evidence showing the order of the commission is unreasonable, that under the intended-

---

[1] The attorney general does not say whether the language of the certificate contains a commodity description, but I take it from his assertion that Telischak advances the intended-use rule of construction, a rule applicable only to commodity descriptions, "to avoid the construction-site limitation on its [Telischak's, certificate of] authority", that he does not contend the certificate contains a commodity description limitation.

[2] Telischak now concedes that it may only transport cement to pipeline manufacturing companies and that it may not, as it has in the past, transport cement to manufacturers who use the cement both in the manufacture of pipelines and for other purposes.

use test the commodity transported must at the time of transportation be in a form and condition so that it can be used without further processing or manufacturing, and that the commission's interpretation is "the most reasonable finding on this record."

The statute provides:

"In all actions under this section the burden of proof shall be upon the complainant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable, as the case may be." CL 1948, § 479.20 (Stat Ann 1968 Cum Supp § 22.585).

There are no reported Michigan cases concerning the standard by which we review an order of the commission interpreting one of its certificates. The attorney general asserts the commission's construction is controlling unless clearly erroneous, arbitrary, an abuse of discretion, or in contravention of some established principle of law, and that the judicial function is exhausted when it is found there is a rational basis for the conclusions of the commission, citing *Whitehouse Trucking, Inc.,* v. *United States* (ND Ohio, 1966), 261 F Supp 9; *Mitchell Brothers Truck Lines* v. *United States* (Or, 1963), 225 F Supp 755 (15 F Carr Cases, § 81.595); and *Ace Lines, Inc.,* v. *United States* (SD Iowa, 1960), 197 F Supp 591.

The commission has not, however, stated the reason[3] for its decision, and thus we have no basis for

[3] The commission's opinion "noted" as part of its statement of reasons supporting its decision (reversed by the circuit judge) interpreting Telischak's certificate as restricted to service of the oil and gas industry, that Telischak did not seek to exercise its asserted right to haul cement under the certificate until 8 years after it purchased the certificate from the prior owner. The commission did not advance nonuser as the reason for its additional interpretation that cement may only be transported for use "directly", without an intermediate manufacturing process. Indeed, the commission's recognition that Telischak possesses a limited right to transport cement is inconsistent with any claim it may not transport cement because

determining whether the commission's order is soundly based. The commission merely states its

"opinion that even if such authority * * * includes transportation of commodities for use in industries other than the oil and gas industries that Telischak would be authorized to transport only commodities intended to be used[4] directly in the construction, repair or dismantling of pipelines.

"Clearly, such authority does not authorize the transportation of raw commodities requiring an intermediate manufacturing process prior to their use in such operations."

If it is clear, it should be possible to state why it is clear. If it is clear, it should be possible to state whether it is clear because the certificate contains a commodity description which under the intended-use test, if adopted by the commission, requires or authorizes that result, or because the certificate contains a job site restriction, or because of some other reason.

It is not our task to guess whether the commission interprets the certificate before us as containing a "commodity description," whether it in fact applied the ICC's "intended-use" test in deciding that Telischak's certificate does not authorize transportation of commodities requiring an intermediate manufacturing process prior to ultimate use, or whether it regarded the certificate as containing a "construction site" limitation (as the attorney gen-

of nonuser. Nonuser is mentioned only in passing in the attorney general's brief, not at all in the intervening appellees' brief and the circuit judge's opinion, and is not the basis of decision by the majority here. Moreover, mere nonuser without evidence that Telischak's nonuse was inconsistent with its asserted right to use, would not be a practical construction justifying an interpretation based solely on nonuse.

[4] The intervenors point to these words, "intended to be used," as evidence that the commission adopted the intended-use test. The attorney general makes no such claim. Those words do not appear to have been used as words of art.

eral asserts), or both a commodity description and a construction site limitation (as intervening appellees urge). Nor is it our function to attempt to apply the ICC's intended-use test before we know whether or how the commission would apply it.

The majority underscores the portion of *Great Western Motor Lines, Inc. and Eugene G. Sharp— Investigation of Operations and Practices,* 96 MCC 522, stating the requirement that the commodity be in a form and condition to be used without further processing or manufacturing, while the attorney general in his brief underscores the word "place" in that statement. In contrast, Telischak asserts that the cement it seeks to transport can be used for the "construction" of pipelines (in the sense of manufacturing pipe for pipelines, as contrasted with mere assembly of pipe already manufactured) without further processing or manufacturing of the cement. The commission states that Telischak is authorized to transport commodities intended to be used "directly" in the construction, repair, or dismantling of pipelines. The attorney general and intervening appellees say Telischak may transport cement to a site where a pipeline is being assembled. This perhaps explains the relevance of the commission's statement that "the consignee companies do not engage in the so-called continuous pour pipeline operation and do not engage in any operations at the site of pipeline construction." If, as appears to be the case, cement can be transported for use at the site where a pipeline is fabricated or assembled, then it may be that it is not the nature of the "intermediate manufacturing process" but the place where it occurs that is critical.

In construing one of its certificates the commission acts in a quasi-judicial capacity, not in a legislative

capacity.[5]  Apart from its obligation to make find-
ings of fact, the commission has an obligation to
state the *reasons* for its conclusions.  It is not our
function to search for rational support of the com-
mission's order as we would if the constitutionality
of a statute were under attack.[6]  It is rather for the
commission to tell us why it reached the conclusion
it did and for us then to decide whether that explana-
tion, not one which we divine, is reasonable and ac-
cording to law.  To affirm the commission on a
rationale not advanced by the commission would be
just as much an invasion of the commission's pre-
rogative as to substitute our judgment for that of
the commission where it advances a sound explana-
tion for its interpretation.

The importance of requiring a statement of rea-
sons in support of the commission's conclusion is
well illustrated by this case.  The bulk of the com-
mission's opinion in this case is devoted to a demon-
stration that the certificate is a *Mercer*-type author-
ity (*T. E. Mercer Extension Oil Field Commodities*,
74 MCC 459), and that, accordingly, Telischak may
only transport commodities intended for use in the
construction, repair, and dismantling of oil and gas
pipelines.  On appeal, the circuit judge reviewed
decisions regarding the *Mercer* doctrine, concluded
that Telischak's certificate was not of that type, and,
therefore, struck the portion of the opinion and
order restricting Telischak "to service for the oil
and gas industry."  No appeal has been taken from
that portion of the circuit judge's decision.  Had

---

[5] The commission's opinion observed, albeit in another context, that
while it has "some quasi-judicial functions, this commission is pri-
marily a legislative body, not a judicial one, and it is clear that all
of the rules and statutes applying to courts should not apply to
this commission as fully as to courts."

[6] *United States* v. *Carolene Products Company* (1938), 304 US 144,
154 (58 S Ct 778, 82 L Ed 1234) ; 16 Am Jur 2d, Constitutional Law,
§ 171, p 388.

the commission not articulated its view that this was a *Mercer*-type certificate, would we have been justified in searching for a rationale to justify the commission's otherwise Delphic determination? I think not. Had we, nevertheless, done so, would we assuredly have understood from a commission opinion devoid of explanation that the result reversed by the circuit judge rested on the *Mercer* doctrine? I think not.

In *Securities & Exchange Commission* v. *Chenery Corporation* (1943), 318 US 80 (63 S Ct 454, 87 L Ed 626), the court, prior to the enactment of the Federal administrative procedure act,[7] ruled that (1) an administrative tribunal may not be affirmed on a ground other than the ground on which it exercises its discretion because to do so would invade the authority vested in the administrative tribunal, and (2) in order to make effective judicial review possible, the administrative tribunal must disclose the reasons for its decision. The court observed (pp 88, 93, 94, 95):

"If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which congress has exclusively entrusted to an administrative agency. * * *

"Its action must be measured by what the commission did, not by what it might have done. It is not for us to determine independently what is 'detrimental to the public interest or the interest of investors or consumers' or 'fair or equitable' within the meaning of sections 7 and 11 of the public utility holding company act of 1935. The commission's

[7] 60 Stat 237 (1946) (5 USC, §§ 1001–1011 [1964]).

action cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order as an appropriate safeguard for the interests protected by the act.  *  *  *

"The orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.  *  *  *

"We are not suggesting that the commission must justify its exercise of administrative discretion in any particular manner or with artistic refinement. We are not sticking in the bark of words. We merely hold that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."

Several years later *Chenery* returned to the Supreme Court, *Securities & Exchange Commission* v. *Chenery Corporation* (1947), 332 US 194, 196, 197 (67 S Ct 1575, 1577, 91 L Ed 1995, 1999). The Court referred to its earlier holding and declared:

"When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which congress has set aside exclusively for the administrative agency.

"We also emphasized in our prior decision an important corollary of the foregoing rule. If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It

will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' *United States* v. *Chicago, M. St. P. & P. R. Co.* (1935), 294 US 499, 511 (55 S Ct 462, 467, 79 L Ed 1023, 1032)."

Professor Davis explains the judicially imposed requirement that administrative agencies state reasons is a by-product of the process of judicial review, and a court which is reviewing an administrative action often feels the need for a statement of reasons in order to better understand what it is reviewing. 2 Davis, Administrative Law Treatise, § 16.12, p 477.

It has been said:

"If judicial review is to have a basis for functioning, the ICC must do more than announce its ultimate conclusions by way of unrationalized fiat. The commission must explain its *reasoning* in clear and precise terms." *Florida East Coast Railway Company* v. *United States* (MD Fla, 1966), 259 F Supp 993, 999. (Emphasis supplied.) See, also, *D. M. K. Realty Corp.* v. *Gabel* (1963), 40 Misc 2d 89 (242 NYS2d 517); *Northeast Airlines, Inc.,* v. *Civil Aeronautics Board* (CA 1, 1964), 331 F2d 579.

While the Michigan public service commission is exempted from our administrative procedure act (CLS 1961, § 24.101 [Stat Ann 1961 Rev § 3.560 (21.1)]), it is subject to the judicially imposed requirement that it state reasons for decision. Unless the commission does so, we cannot provide that measure of review required by the Constitution (Const 1963, art 6, § 28) and the statute (CLS 1961, § 479.20, Stat Ann 1968 Cum Supp § 22.585). Un-

less the commission states reasons, we are left to guess what they might be, or to rationalize reasons of our own, reasons which the commission might itself reject. To affirm on the basis of a reason which the commission itself might not adopt would be to invade the commission's function. This we should avoid. And we have no way of knowing whether the commission has adopted a particular reason unless it tells us whether it has.

Our job is to review reasons advanced by the commission, not to select amongst the competing reasons postulated by counsel for the parties, nor attempt to understand tests evolved by the United States interstate commerce commission which may or may not have been adopted by the Michigan public service commission,[8] and to search out a plausible basis for the commission's action.

I would reverse and remand to the commission for clarification of its opinion.

---

[8] Merely because the MPSC has adopted ICC determinations in many cases and had indicated that as a matter of policy it intends to harmonize its opinions with those of the ICC does not mean that the MPSC has adopted without consideration, analysis, or express statement everything the ICC has said and done in its long history and intends to be bound thereby.