CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY v. PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 25,990. Filed June 27, 1933.]

*K. L. Richmond, Hatfield & Roberts* and *Hayes & Hayes,* for appellant.

*James M. Ogden,* Attorney-General, *G. W. Hufsmith* and *Charles F. Werner,* assistant Attorneys-General, and *Kahn, Enloe & Myer,* for appellee.

ROLL, J.—This action was brought by appellee, Public Service Commission of Indiana, to enjoin appellant, Chicago and Eastern Illinois Railway Company, a railroad corporation, operating a line of railroad in Vanderburg County and other counties in this state and in other states, from charging any rate or charge in excess of $2.70 per car, the alleged lawful rate, for the transpor-

tation of coal from the mine of the Sunnyside Coal and Coke Company, to the point of interchange of appellant with the tracks of the Illinois Central Railroad Company at Devon Street, all within the city limits of Evansville, Vanderburgh County, Indiana.

The issues were formed by a complaint in one paragraph, an answer in two paragraphs, the first paragraph being a general denial, and the second presenting an affirmative defense, and a reply in general denial to the second paragraph of answer.

The issue presented by the pleading was whether or not the movement of coal set out in appellee's complaint and as applied to the Illinois Central Railroad Company fuel coal, transported by it beyond the state of Indiana after delivery at the Devon Street intersection, was an interstate or intrastate movement, and whether the intrastate rate fixed by appellee or the interstate rate as published by appellant and duly filed with the Interstate Commerce Commission applies.

On submission of the issue to the trial court, there was a finding in favor of the plaintiff, and a final judgment entered. The finding and judgment of the trial court is as follows:

"And the court having heretofore heard the evidence in said cause, and also the argument of counsel and being duly advised in the premises finds for the plaintiff, and finds that Harwood yards in Evansville, Indiana, among other purposes is the distributing point of the Illinois Central Railroad Company for company fuel coal for its Indiana Division and Indianapolis district and is being used now and has been so used for many years continuously; that said Harwood yards are the property of the Illinois Central Railroad Company; that the Sunnyside Coal & Coke Company owns and operates a coal mine on the Chicago and Eastern Illinois Railway Company line of railroad in the city of Evansville, Indiana; that the point of interchange between the Chicago and Eastern Illinois Railway

Company and the Illinois Central Railway Company in the city of Evansville, Indiana, is the interchange track at Devon Street; that at the present time and continuously for many years past the Sunnyside Coal and Coke Company contracted with the Illinois Central Railroad Company to sell and deliver coal to the Illinois Central Railroad Company for fuel purposes for its said Indiana Division and said Indianapolis District upon the Interchange track of the Chicago and Eastern Illinois Railway Company and the Illinois Central Railroad Company at Devon Street in Evansville, Indiana, at and for a certain price; that the plaintiff determined and fixed as a reasonable rate of transportation for coal in carload lots from the mines of the Sunnyside Coal and Coke Company over the railroad line of the Chicago and Eastern Railway Company in Evansville, Indiana, to its point of interchange on Devon Street in Evansville, Indiana, with the Illinois Central Railroad Company at $2.70 per car for all intrastate shipments; that the Chicago and Eastern Illinois Railway Company published and has on file with the plaintiff as its lawful rate for the transportation of coal from the mines of the Sunnyside Coal & Coke Company on the railroad of the Chicago and Eastern Illinois Railway Company in Evansville, Indiana, to its point of interchange on Devon Street in Evansville, Indiana, with the Illinois Central Railroad Company at $2.70 per car for all intrastate shipments; that the defendant Chicago and Eastern Illinois Railway Company published and has on file with the Interstate Commerce Commission as its lawful rate for the transportation of coal from the mines of the Sunnyside Coal & Coke Company on the railroad of the Chicago and Eastern Illinois Railway Company in Evansville, Indiana, to its point of interchange on Devon Street in Evansville, Indiana, with the Illinois Central Railroad Company at thirteen cents (13c) per ton, minimum Six and 30/100 Dollars ($6.30) per car for coal in carload lots for all interstate shipments; that the transportation of fuel coal by the defendant over and upon its railroad from the mines of Sunnyside Coal and Coke Company in Evansville, Indiana, to the point of interchange with the Illinois Central Railroad Company at Devon Street in Evansville, Indiana, for fuel coal

sold by the Sunnyside Coal and Coke Company to the Illinois Central Railroad Company for delivery to the Illinois Central Railroad Company at Devon Street in Evansville, Indiana, is a completed shipment and is intrastate commerce; that the Illinois Central Railroad Company knows in advance of the delivery of fuel to it at Devon Street in Evansville, Indiana, by the Sunnyside Coal and Coke Company that said fuel coal will be reshipped by the Illinois Central Railroad Company to its coal fuel stations within and without the state of Indiana; that the defendant has collected and threatens to continue to collect its said interstate rate of thirteen cents (13c) per ton, minimum Six and 30/100 Dollars ($6.30) per car for such completed delivery, transportation and shipment when any of said company fuel coal after such shipment is reshipped by the Illinois Central Railroad Company for company fuel purposes beyond the state line of the state of Indiana; and finds that the defendant company, its officers, servants, agents and employees, should be perpetually enjoined and restrained from charging or attempting to charge and from collecting or attempting to collect a rate or charge other, greater than or in excess of $2.70 per car for the transportation of all coal in carload lots shipped or hereafter to be shipped from the mine of the Sunnyside Coal and Coke Company, and which mine is located on the tracks of the defendant company in the city of Evansville, Indiana, and which coal has been or hereafter is to be sold to and used by the Illinois Central Railroad Company as company fuel coal, and which coal has been or hereafter is to be transported over the line of the defendant company from the mine of the Sunnyside Coal and Coke·Company in said city of Evansville, Indiana, for delivery to the Illinois Central Railroad Company at the point of connection between the lines of the defendant company and the Illinois Central Railroad Company at Devon Street in said city of Evansville, Indiana; and that the plaintiff should recover of and from the defendant its costs herein, to which findings and each of them the defendant at the time separately objects and excepts.

"It is, therefore, considered, ordered, adjudged and decreed by the court that the defendant, Chicago and Eastern Illinois Railway Company, its

officers, servants, agents and employees be and they are hereby permanently enjoined and restrained from charging or attempting to charge, and from collecting or attempting to collect a rate or charge other, greater than or in excess of $2.70 per car for the transportation of all coal in carload lots shipped or hereafter to be shipped from the mine of the Sunnyside Coal and Coke Company, and which mine is located on the tracks of the defendant company in the city of Evansville, Indiana, and which coal has been or hereafter is to be sold to and used by the Illinois Central Railroad Company as company fuel coal, and which coal has been or hereafter is to be transported over the line of the defendant company from the mine of the Sunnyside Coal and Coke Company in said city of Evansville, Indiana, for delivery to the Illinois Central Railroad Company at the point of connection between the lines of the defendant company and the Illinois Central Railroad Company at Devon Street in said city of Evansville, Indiana, and to which judgment, order and decree of the court the defendant at the time objects and excepts.

"It is further considered and adjudged by the court that the plaintiff recover of and from the defendant its costs herein paid, laid out and expended, to which judgment, order and decree the defendant at the time objects and excepts."

Appellant duly filed its motion for a new trial which was overruled by the court, which ruling is the only error assigned on this appeal.

Appellant, by his motion for a new trial, challenges the sufficiency of the evidence to sustain the decision of the court, and that the decision of the court is contrary to law.

The evidence in the case is not in conflict and establish in substance the following facts in addition to the facts as set out in the finding of the court set out above.

The fuel coal of the Illinois Central Railroad Company for its Indiana Division was purchased from, and furnished by the Crescent Coal & Coke Company, a part of it came from the Crescent mine located on the Illinois

Central tracks and some from the Sunnyside mine in Evansville, Indiana, located on appellant's tracks. Both the Crescent and the Sunnyside mines are owned and managed by the Crescent Coal and Coke Company. The fuel coal for the Illinois Central Railroad Company from the Sunnyside mine is sold and delivered to said company F. O. B. the tracks of the Illinois Central at its point of interchange with appellant's tracks at Devon Street in Evansville, Indiana.

On Monday morning of each week the general superintendent of the Illinois Central Railroad Company at Chicago, determined the amount of fuel coal to be ordered from the Crescent Coal & Coke Company for the Indiana Division to be delivered that week. This determination is communicated by him to the chief train dispatcher at Mattoon, Illinois, who in turn communicates said weekly requirements to the agent in Evansville who gives the order and makes the requisition for its weekly requirements from the Crescent Coal & Coke Co. If the coal comes from the Sunnyside mine, the empty cars at the request of the Crescent Coal & Coke Company are placed by the Illinois Central on the interchange track at Devon Street in Evansville, Indiant, where appellant picks them up, hauls them over its tracks to the Sunnyside mine where they are loaded with coal and then hauled by appellant over its tracks to said interchange track at Devon Street. This movement is made by appellant on a switching ticket, and is the movement for which appellant charges the interstate rate, of 13 cents per ton, minimum $6.30 per car, and is the movement here in question.

The appellant picks up these loaded cars of coal and moves them to its Harwood yards where they await distribution. Report is made by the Illinois Central yardmaster at Evansville to the agent at Evansville, that the coal is in the Harwood yards. The agent then

notifies the chief train dispatcher in Mattoon, Illinois, who then gives instructions for the distribution of part or all of the coal from the Harwood yards to points on its Indiana Division, some within and some without the state of Indiana. This coal remains in the Harwood yards from four hours to fifteen days, depending upon the fuel requirements of the Illinois Central Railroad Company. From the time the weekly requirements for fuel coal for the Indiana Division are determined by the general superintendent in Chicago the Illinois Central Railroad Company knows that the coal purchased from the Sunnyside mine for fuel purposes will be moved and distributed from its Harwood yards in Evansville to its coaling stations on the Indiana Division within and beyond the state of Indiana. The Crescent or Sunnyside mines have no control, direction or knowledge of the final distribution of this fuel coal. It completed its delivery when it placed the cars of coal on the interchange track of the Illinois Central at Devon Street, and neither did appellant have any such knowledge or control. Appellant's duty in the movement was completed upon delivery from Sunnyside mine to the interchange track at Devon Street. The coal then becomes the property of the Illinois Central Railroad Company, and it alone determines when and where it shall go. Most of the coal is transported out of the state but a small amount is used in the Harwood yards, and some is shipped to points within the state.

Appellant first contends that the finding of the court should be treated as a general finding as there was no request by either party that the court find the facts specially. This is the rule in Indiana under §603, Burns Ann. St. 1926. *Northcutt* v. *Buckles* (1878), 60 Ind. 577; *Caress* v. *Foster* (1878), 62 Ind. 145; *Connersville Wagon Co.* v. *McFarlan Carriage Co.*

(1905), 166 Ind. 123, 76 N. E. 294, 3 L. R. A. (N. S.) 709, and will be so considered herein.

The decisive question in this case arises upon appellant's third proposition, to wit, The court erred in overruling appellant's motion for a new trial, under which it contends that the decision of the court is not sustained by sufficient evidence and is an interference with interstate commerce in violation of the commerce clause of the constitution of the United States, which provides that:

"The congress shall have the power. . . . To regulate commerce with foreign nations and among the several states, and with the Indian tribes." Art. 1, Sec. 8, Clause 3, United States Constitution.

It is urged earnestly and with much ability by counsel for appellant that the movement of Illinois Central fuel coal from the mine of the Sunnyside Coal and Coke Company to the point of interchange of the line of appellant and the Illinois Central Railroad Company at Devon Street, in the city of Evansville, said coal being thence transported by the said Illinois Central Railroad Company beyond the state, pursuant to its purpose and intention at the time it ordered such coal, is a part of a movement in interstate commerce and that appellant must charge and collect the interstate rate therefor and not the intrastate rate as ordered by the trial court. If appellant is correct in this contention the judgment below should be reversed.

The facts show that the contract of purchase between the Illinois Central Railroad Company and the Crescent Coal and Coke Company for fuel coal coming from the Sunnyside mine, was to be delivered by the seller F. O. B. the tracks of the purchaser, at Devon Street in Evansville, Indiana. That said movement was made on switching tickets, and when so delivered by appellant, its service was complete, and the title and control

thereof passed to the Illinois Central Railroad Company. That the Illinois Central Railroad Company was immediately informed of the delivery and thereupon took possession of said cars and moved them over its own tracks from the interchange tracks to its Harwood yards, a few miles distant, there to await shipping instructions. After the loaded cars are in the Harwood yard the agent of the Illinois Central Railroad Company at Evansville notifies the chief train dispatcher in Mattoon, Illinois, who then gives instructions for the distribution of part or all of said coal from the Harwood yards to points on its Indiana Division, some within but most of it without the state of Indiana. This coal remains in the Harwood yards from four hours to fifteen days, depending entirely on the fuel need and requirements of the Illinois Central Railroad Company.

We think under the facts of this case, the movement performed by appellant was an intrastate movement and not interstate. The movement from the Sunnyside mine to the interchange track at Devon Street was no part of an interstate movement. It was not by said movement placed in interstate commerce as the journey to another state had not yet begun. The cars were delivered to the purchaser at the place agreed upon, and there accepted by it and removed to its yards, to await distribution. It is our judgment that interstate commerce did not actually begin till the cars were assigned to their destination, and had started on their final journey out of the state. The interruption of the movement at the Harwood yards was not occasioned by any necessity on account of the means of transportation nor from any corrupt or fraudulent purpose to evade any state or Federal law but, for the business purposes of the Illinois Central Railroad Company itself.

The facts in this case as we view them, brings it

within the rule laid down in the leading case of *Coe* v. *Town of Errol* (1886), 116 U. S. 517, 6 S. Ct. 475, 479, 29 L. Ed. 715. The question in that case was: Are the products of a state, though intended for exportation to another state, and partially prepared for that purpose by being deposited at a place or port of shipment within the state, liable to be taxed like other property within the state? Do the owner's state of mind in relation to the goods, that is, his intent, to export them, and his partial preparation to do so, exempt them from taxation?

The question arose by an attempt, on the part of the town of Errol, New Hampshire, to tax certain logs, owned by residents of Maine and Massachusetts. The logs had been drawn down from Wentworth's Location in New Hampshire, and placed in Clear Stream, also in New Hampshire, to be from thence floated down the Androscoggin river to the state of Maine. After they had thus been drawn down and placed in Clear Stream, a state tax was imposed upon them, and the tax was challenged on the ground that the logs were in process of transportation from Wentworth's Location in New Hampshire to the state of Maine. In passing upon this question the court said:

"It is true, it was said in the case of the Daniel Ball (1870) 10 Wallace 557 (19 L. Ed. 999): 'Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced.' But this movement does not begin until the articles have been shipped or started for transportation from the one state to the other. The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another state, or committed

to a common carrier for transportation to such state, its destination is not fixed and certain. It may be sold or otherwise disposed of within the state, and never put in course of transportation out of the state. Carrying it from the farm or the forest to the depot, is only an interior movement of the property, entirely within the state, for the purpose, it is true, but only for the purpose, of putting it into a course of exportation; it is no part of the exportation itself. Until shipped or started on its final journey out of the state its exportation is a matter altogether *in fieri,* and not at all a fixed and certain thing."

The principle stated in the above quotation is very applicable to the case at bar. The fuel coal transported by appellant from the Sunnyside mine to the point of interchange at Devon Street, and there picked up by the Illinois Central Railroad Company and taken to its Harwood yards to remain there and await shipping instructions, was not a movement in interstate commerce. No one knew at that time the destination of any car. No one knew at that time that any particular car would be transported beyond the state line. They knew, it is true, that some of the cars of coal in fact most of them would move in interstate commerce. But not until they had come to rest in the Illinois Central Railroad Company's yard, and until there had been an interruption in the transportation from four hours to fifteen days, and until shipping instructions had been received from the office of the Illinois Central Railroad Company at Mattoon, Illinois, and until the cars were actually placed in the train was the destination of any particular car known. Not until the cars had actually started to move from the Harwood yards to their destination out of the state did they actually begin their interstate journey. The movement from the mine to the interchange track and the movements to the yard was preliminary and preparatory and entirely within the state, for the purpose, it is true, but only for the purpose of putting it

in interstate commerce. It had not started on its final journey out of the state, and until then its destination was not definite or certain, but was a matter altogether *in fieri.*

It was said in the case of *Coe* v. *Errol, supra,* that the true rule on the subject was,

> "That such goods do not cease to be part of the general mass of property in the state, subject, as such, to its jurisdiction, and to taxation in the usual way, until they have been shipped, or entered with a common carrier for transportation to another state, or have been started upon such transportation in a continuous route or journey."

When the cars, loaded with fuel coal for the Illinois Central Railroad Company, left the Sunnyside mine, they were not transported in a continuous journey out of the state, neither were they delivered to a carrier for the purpose. They were transported from the Sunnyside mine to the point of interchange at Devon Street by appellant in pursuant to a contract of sale, between the Crescent Coal & Coke Company and the Illinois Central Railroad Company for the sale and delivery at said point of interchange. When the Illinois Central Railroad Company picked up the loaded cars at said point of interchange, they did not start an interstate journey, they were not destined at that time to a point beyond the state; they were taken to the Harwood yards, there to await the determination by the proper officials of Illinois Central Railroad Company as to when and where the various cars would be shipped, and the interstate movement did not actually begin, until they left the Harwood yards destined to points beyond the state. The movement effected by appellant was wholly within the state, purely local in character and clearly an interstate movement.

The case of *State of New York ex rel. Pennsylvania R. Co.* v. *Knight* (1904), 192 U. S. 21, 24 S. Ct. 202,

204, 48 L. Ed. 325, was a case where the Pennsylvania Railroad under a special license from the city of New York, operated a cab and coach service. The services rendered consisted in transporting persons who intended to take an interstate passage over the line of Pennsylvania R. R. Co. from their residences or hotels in New York City to the ferry landing at Twenty-third Street or transporting persons, who had already completed an interstate journey, from the ferry landing to their homes or hotels. It was claimed by the railroad company that the cab service was merely an extension and therefore a part of its interstate transportation. That it was not carrying on a cab business generally, but was furnishing to those who sought to take over its lines some interstate transportation, or like service to those who had already received such interstate transportation. The question for decision was whether the cab service was interstate or intrastate commerce. The court held that it was intrastate commerce and in passing on the question the court used the following language, which we think helps to determine the question before us:

"As we have seen, the cab service is rendered wholly within the state and has no contractual or necessary relation to interstate transportation. It is either preliminary or subsequent thereto. It is independently contracted for, and not necessarily connected therewith."

So in the case at bar. Appellant by its service herein, made delivery of the loaded cars from the Sunnyside mine to the point of interchange at Devon Street. This movement had no necessary relation with any interstate shipment which the Illinois Central Railroad Company might make after accepting the coal at the point agreed upon.

As we view the facts in this case, we see only a sale and purchase of coal by and between the Illinois Central

Railroad Company, the purchaser and the Crescent Coal & Coke Company the seller, and as a part of said contract of sale and purchase, the Crescent Coal and Coke Company agreed to deliver the coal F. O. B. interchange tracks at Devon Street, in Evansville, and that appellant was the carrier used by the seller to effect such delivery. Therefore the delivery, namely, the movement from the Sunnyside mine to the point of interchange at Devon Street was an independent, and completed, movement, wholly within the state, having no contractual or necessary relation whatever with any interstate transportation which might or might not follow after the delivery. The fact that the Crescent Coal and Coke Co. or the appellant might have known or did know, that the Illinois Central Railroad Company would ultimately place some of the loaded cars of fuel coal in interstate transportation does not supply the causal connection between the services rendered by appellant and the subsequent interstate transportatioin by the Illinois Central Railroad Company.

Mr. Gavit in his recent work on The Commerce Clause, §63, pp. 110-111, says, that:

"Interstate commerce consists of an act in one state plus a good faith and lawful intention that another act be performed in a second state, *having a direct causal connection with the first.*" (Our italics.)

In this case we see no direct causal connection between the first movement and the interstate shipment that may or may not follow.

In the case of *Penn. R. R. Co. ex rel.* v. *Knight, supra,* the court further said:

"But when service is wholly within the state, it is presumably subject to state control. The burden is on him who asserts that, though actually within, it is legally outside the state; and unless the inter-

state character is established, locality determines the question of jurisdiction."

We quote further from the same case:

"Wherever a separation in fact exists between transportation service wholly within the state and that between the states, a like separation may be recognized between the control of the state and that of the nation."

From reading the many cases upon the question here involved, the question of whether a particular movement is interstate or intrastate commerce is a question of fact, and must be determined by the essential character of the commerce. Mere intention of the buyer of the coal ultimately to send some of the coal beyond the state line does not within itself put the coal in interstate commerce. *Hughes Bros.* v. *Minnesota* (1926), 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359. Nor does preparatory gathering, for that purpose at a depot or yard constitute interstate commerce. *Coe* v. *Errol, supra; Atlantic Coast Line* v. *Standard Oil Co.* (1927), 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270.

The case of *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Iowa* (1914), 233 U. S. 334, 34 S. Ct. 592, 58 L. Ed. 988, involves principals very much in point. There, the Clark Coal Company operated a branch coal business in Davenport, Iowa, which the company used as a distributing point for coal shipped to it by consignors from various points in the state of Illinois; the coal is placed by the railroad bringing it into Davenport on an interchange track. All charges from point of origin to Davenport are paid by the coal company to the railroad bringing said coal; upon arrival of the coal upon the interchange track the coal company would notify the Milwaukee Railroad, who had nothing to do with the

original shipment, of the placement of said coal, and that it desired to reship said coal over its line to different points of its line, and tendered a written billing from Davenport to points designated in the state of Iowa. It was contended by the Clark Coal Co. that its reshipment under a new billing without unloading, and in the same cars, from the point of interchange to another point in Iowa, by the different carrier was not a continuation of an interstate movement but was a new and independent haul in intrastate commerce.

The Iowa commission decided that the movement from Davenport to various points in the state of Iowa was an intrastate movement. We quote from the language used:

"Under the admitted facts, the city of Davenport became a distributing point for coal shipped by the consignor. The certainty of the shipments of coal ended at Davenport. The point where the same was to be shipped beyond Davenport, if at all, was determined after the arrival of the coal at Davenport. The coal was under the control of the consignee, and he could sell it in transit, or at Davenport, or reconsign it to a point on the Milwaukee Railroad, or any other railroad, at his own discretion."

The case went to the Supreme Court of Iowa (152 Iowa 317, 130 N. W. 802), who took the same view and then to the Supreme Court of the United States. The Supreme Court of the United States affirmed the lower court and in so doing said:

"The record discloses no ground for assailing this finding. It is undoubtedly true that the question whether commerce is interstate or intrastate must be determined by the essential character of the commerce, and not by mere billing or forms of contract."

The court further said:

"The fact that commodities received in interstate shipments are reshipped by the consignee in the

cars in which they are received, to other points of destination, does not necessarily establish a continuity of movement, or prevent the reshipment to a point within the same state from having an independent and intrastate character."

We think the same principle would apply whether the initial shipment was intrastate and the subsequent shipment interstate, or the initial shipment was interstate and the subsequent shipment intrastate as in the Clark Coal Case, *supra*. We cannot see that there was any more interruption or independence in the two shipments in the Clark Coal Co. case than there is in the case at bar. There was as much continuity of movement in the Clark Coal Co. case as in the present case.

Ultimate destination is always a factor, but in and of itself is not a determining factor. The Illinois Central Railroad Company used its Harwood yards, among other things, as its storage and distributing point of fuel coal to its Indiana Division. When the coal reaches its Harwood yards it comes to rest. Any shipment from this point of its fuel coal, is a separate and distinct movement and not a continuation of the original shipment and becomes an interstate or intrastate movement, depending upon the destination. If the movement is wholly within the state it is intrastate, if the movement is to or through another state it is interstate.

It would extend this opinion unduly to analyze all the cases cited and relied upon by appellant. As heretofore stated the question as to whether a movement is intrastate or interstate depends upon the essential elements of the commerce, as gathered from all the facts and circumstances surrounding the transaction. It is largely a question of fact and each case must be decided upon the facts as they appear in that

case. Therefore, to analyze all the cases, it would necessitate a full statement of the facts as they are the determining factor in each case. The rules of law are no different in the cases cited by appellant, than the rules announced in the cases cited and relied upon by appellee. We think the facts in the cases of *Chicago, Rock Island & Pacific R. Co.* v. *Wright* (1916), 239 U. S. 548, 36 S. Ct. 185, 60 L. Ed. 431; *Illinois Central R. R. Co.* v. *Fuentes et al.* (1915), 236 U. S. 157, 35 S. Ct. 275, 59 L. Ed. 517; *Interstate Commerce Commission* v. *Illinois Central R. R. Co.* (1910), 215 U. S. 452, 30 S. Ct. 155, 54 L. Ed. 280; *Philadelphia & Reading Ry.* v. *Hancock* (1920), 253 U. S. 284, 40 S. Ct. 512, 64 L. Ed. 907, and the many other cases cited and relied upon by appellant can readily be distinguished from the present case and are not controlling in this case.

In most of the cases cited and relied upon by appellant where there was an interruption or break in the continuity of the movement, such interruption was occasioned by a change from one kind of transportation to another such as from rail to steamer or from steamer to rail, or from other transportation necessity, and not for the purpose of storage, distribution or other commercial conveniences.

The other question raised and discussed by appellant, is the authority of appellee to bring this action. We are not impressed with appellant's contention on this point. Sec. 12834, Burns Ann. St. 1926, we think clearly confers such right upon appellee, and authorizes it to maintain this action.

We find no reversible error in the record. Judgment affirmed.