SHORT FREIGHT LINES, INC. *v.* MICHIGAN PUBLIC SERVICE COMMISSION AND CENTRAL TRANSPORT, INC.

1. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—COMPLAINT.
Any party appealing from an order of the public service commission must state in its complaint why the order is unreasonable or unlawful (MCLA § 479.20).

2. ADMINISTRATIVE LAW—APPEAL AND ERROR—SCOPE OF REVIEW.
Administrative findings of fact, if supported by evidence, are generally conclusive upon a reviewing court; however a reviewing court must set aside an administrative order if it is based on a misapplication of the relevant law to the facts found.

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur, Public Utilities and Services § 224 *et seq.*
[2] 2 Am Jur 2d, Administrative Law §§ 610, 614.
[3] 43 Am Jur, Public Utilities and Services §§ 219, 221.

3. CARRIERS—COMMON CARRIERS—ABANDONMENT—INTERLINING.

> The public service commission did not err in finding that a trucking company did not abandon or discontinue its service even though it interlined less than truckload traffic to one of the cities it was authorized to serve where the trucking company did not fail to hold itself out as a common carrier, did not discourage traffic to or from the city to be served, did not do anything inconsistent with actually performing service to the city, did not deny service, physically handled truckload traffic itself and where the service provided by interlining was as good as, or in some cases better than, the service as would have been provided if handled solely by the trucking company.

Appeal from Ingham, Sam Street Hughes, J.   Submitted Division 2 May 14, 1970, at Lansing.   (Docket No. 7,458.)   Decided July 28, 1970.

Complaint by Short Freight Lines, Inc., against Michigan Public Service Commission, to invalidate the commission's order permitting transfer of certificate of public convenience and necessity to transport commodities intrastate from Kramer Consolidated Freight Lines, Inc., to Central Transport, Inc. Central Transport, Inc., intervened as party defendant.   Judgment for defendants.   Plaintiff appeals. Affirmed.

*Fraser, Trebilcock, Davis & Foster,* for plaintiff.

*Snyder, Ewert, Ederer & Parsley,* for Central Transport, Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David P. Van Note* and *Walter V. Kron,* Assistants Attorney General, for Michigan Public Service Commission.

Before: LESINSKI, C. J., and DANHOF and SNOW,* JJ.

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

Snow, J. We are confronted in this appeal with the single question of whether intervening defendant's transferor Kramer-Consolidated Freight Lines, Inc. had abandoned or discontinued service to the town of Pinconning[1] within the meaning of MCLA § 476.13 (Stat Ann § 22.546),[2] such that its operating authority should be considered revoked as a matter of law. Plaintiff had brought the action to the Ingham County Circuit Court pursuant to MCLA § 479.20 (Stat Ann 1970 Cum Supp § 22.585), appealing the decision of the defendant commission that the transferor had not so abandoned or discontinued service by interlining[3] less-than-truckload traffic to Pinconning.

It is the claim of the appellant that interlining less than truckload traffic destined for Pinconning for a period of two years constituted abandonment or discontinuance of service to Pinconning as a matter of law. The Supreme Court of Michigan was confronted with a similar claim in the case of *J. E. Bejin Cartage Company* v. *Public Service Commission* (1958), 352 Mich 139, with respect to which the Court stated:

---

[1] The route is more particularly described in certificate no. C-333: "Along the further route from Bay City via US-23 to Pinconning thence via Bay City road 574 west to the junction with Bay county road 483, thence via Bay county road 483 to the intersection thereof with M-61, thence via M-61 to Gladwin, provided, that applicant shall serve no intermediate points along US-23 between Bay City and Pinconning."

[2] "No common motor carrier authorized by this act to operate shall abandon or discontinue any service established under the provisions of this act without an order of the commission. Any certificate under which service is discontinued for more than 10 days without the previous order of this commission authorizing the same shall be deemed to be revoked without any action upon the part of the commission."

[3] "Interlining" as used in the cartage business means the voluntary transference of freight to another carrier even though the transferring carrier has the requisite authority to deliver said freight to its ultimate destination.

"[W]e are hard put to envisage any situation where the issue of abandonment or discontinuance of service, where controverted, would not from its nature require in every case an orderly hearing and determination of the facts * * * [W]here there is no substantial dispute on the facts tending to show an actual abandonment or discontinuance of service, then such an issue may become what we call solely one of law. (That is the way we read the *Alger* case.) But where there is such a dispute on the facts, and where there is competent evidence tending to support the finding made, then we conceive the question to become—or rather remain— essentially one of fact, or what we may call the ultimate fact. This ultimate fact to be determined— in this case whether there was or was not an abandonment or discontinuance of an established service —may and normally does in turn depend upon many other contributing factors or facts. The mere fact, however, that the ultimate fact to be determined may, when found, resolve the controversy and end the lawsuit no more logically or necessarily transforms that fact, however vital to a resolution of the controversy, into one of law than a similar arbitrary stamping as law of the minutiae of facts that lead up to the ultimate fact to be determined would in turn alter their true character as facts.

"Facts found one way or another may result in undeniably profound legal and economic consequences for the litigants and the public; but for our courts to appear to hold out of hand that every decisive fact found by an administrative tribunal clothed with the power and duty—and, we may add, ostensibly the training and facilities—to resolve such facts, instead becomes in all circumstances one of law, is to make an appearance before such a body merely an empty and 'expensive way station on the road to ultimate decision.' " 352 Mich at 151, 152.

Following the hearing in this case before the Michigan Public Service Commission, the commis-

sion made the following finding of facts and determination:

"The facts are relatively clear and not in dispute. For some period of time, the transferor, Kramer, holding authority to serve Pinconning, turned over to interline carriers such less-than-truckload traffic as was tendered to it by various shippers. The point of interline was generally Bay City. Truckload traffic, and there appears to be only one such movement, was handled directly and physically by Kramer. The question then is as to whether or not Kramer by so-called 'interlining' in effect abandoned or discontinued its service to that community.

"Traffic tendered to Kramer at various points on its routes and destined for Pinconning was relatively limited. The record is clear that by interlining such traffic with other carriers the resulting service to Pinconning was as good and in many instances better than if Kramer itself had physically performed the operation. This is not an exceptional manner of handling certain shipments. Because of peculiarities of every carrier's operations, it is not unusual and is to be expected that in some instances interline service to certain points and for certain traffic may be the most expeditious. This does not constitute denial of service or lack of holding out to supply service. In accepting such traffic and assuring its delivery, the carrier has recognized its initial obligation. We do not feel it can be validly claimed that the carriers participating in this service have usurped or the commission abrogated authority in a situation such as this, especially when the public interest has been so adequately served. As we have said, the routes of Kramer literally cover several hundreds of Michigan miles. To find that Kramer has abandoned or discontinued operations at this particular point under the circumstances would not be reasonable." (Opinion of the Commission, March 9, 1967.)

We note first that MCLA § 479.20 requires the plaintiff to show "by clear and satisfactory evidence" that the commission's determination is "unlawful or unreasonable." *Associated Truck Lines, Inc.* v. *Public Service Commission* (1966), 377 Mich 259; *Telischak Trucking, Inc.* v. *Public Service Commission* (1968), 11 Mich App 23. Our review of the applicable law convinces us that plaintiff did not meet this burden in the circuit court.

We are provided with sufficient interpretations of the statute by the Michigan Supreme Court to find that the facts of this case do not present a situation of abandonment or discontinuation of service within the meaning of the Michigan act. The Court's first discussion of § 13, in *George F. Alger Company* v. *Public Service Commission* (1954), 339 Mich 104, is of limited value because it was based on a misunderstanding of the applicable statutes, but the Court did indicate that abandonment and discontinuance are separate concepts.

It should be noted that in *Alger* the equipment required to perform the service contemplated was admitted by the defendant to be under a binding lease to the plaintiff and not available for service.

In *J. E. Bejin Cartage Company, supra,* the Court reviewed a more compelling case for abandonment or discontinuance of service than that presented here, and nevertheless affirmed a commission finding of no abandonment or discontinuance of service. The facts as found by the commission showed that:

"[T]he original permission was granted to Detroit Delivery, Inc., on or prior to July 1, 1940; that in 1944 it sold part of its package-carrying equipment to another carrier and cancelled some of its accounts; that it then agreed with said carrier to discontinue at least the major part of the carrying of said retail merchandise; that thereafter Detroit Delivery, Inc.,

continued to carry some retail merchandise for said retail merchants as well as for others, both retail and wholesale; that for the period 1945 through 1950 it rendered carrying service and furnished vehicles and drivers therefor in Detroit and within an 8-mile radius beyond; that from 1951 to March 1956, Detroit Delivery, Inc., performed little or no retail delivery beyond Detroit; that at the time of the hearing and some 11 years prior thereto Detroit Delivery, Inc., had been transporting alcoholic supplies and equipment of the Michigan Liquor Control Commission throughout points in the southern peninsula of Michigan; that at all times 'at least from 1944 up to the date of the hearing' Detroit Delivery, Inc., had equipment capable of being used to deliver packages and parcels; that during an even longer period it had tariffs on file with the commission covering such transportation; and, finally, 'that Detroit Delivery, Inc., at all times for the period 1944 through 1956 was ready, willing and able to perform package or parcel delivery service under its certificate.' " 352 Mich at 145, 146.

In 1956, Detroit Delivery, Inc. had transferred its operating authority in Detroit to Peter P. Ellis Delivery System, Inc. Bejin and other carriers protested to the commission that the transferred authority had been revoked under § 13. The Supreme Court agreed with the commission that this was not the case. It pointed out the fact that there was no delay or interruption in service to the customers of the carrier, just as in this case:

"We also apprehend that the question properly at issue before the commission in our case was not that of possible diminution in or curtailment of service by Detroit Delivery, Inc., whether authorized or not, but whether it had abandoned or discontinued all package service, within the meaning of section 13. Nor do we understand that that section in its present form purports to deal with anything short

of outright total abandonment or discontinuance of an established service. Whether that section should or not is a question more properly for the legislature than the courts." 352 Mich at 151.

The third major discussion of § 13 was in *Associated Truck, supra,* in which Central Transport was also the intervening defendant and transferee of an intrastate operating authority allegedly abandoned. Yellow Transit Freight Lines, Inc. established a policy of discouraging unprofitable intrastate traffic in 1961, and shortly thereafter transferred its intrastate operating authority to Central Transport. Associated Truck protested to the commission which found no abandonment. The circuit court reversed, making its own determination of facts. The Supreme Court remanded to the commission. It found the circuit court's review of the case erroneous, since the circuit court must limit itself to the question of whether the law was correctly applied by the commission, not whether the facts were correctly determined. It did, however, agree with the circuit court that the facts presented constituted a discontinuation of service within the *Alger* definition:

"[S]ection 13 is designed to assure that a carrier which seeks authority to perform services, actually performs them to the extent there is a demand therefor and that when such carrier determines to abandon its authority or when such carrier in fact discontinues such services for more than 10 days without prior approval of the commission, the commission can authorize new carrier applicants to perform such services or other certified carriers can expand their facilities in relative economic security to fulfill the public's need for such services." 377 Mich at 291.

Reviewing the action of the commission, the Court stated:

"Thus, while detailed findings of fact such as the commission included in its *Bejin* order are lacking in the commission decision reversed by the circuit judge, it clearly appears from the written decision that the commission found that Yellow Transit drastically curtailed its intrastate service by closing certain terminals and generally avoiding certain types of traffic. The extent of such curtailment is not explicitly found by the commission other than that it was drastic." 377 Mich at 289.

The Court went on to say:

"To permit a carrier voluntarily to curtail its services so drastically that no services are rendered for periods in excess of 10 days without enforcement of the legislative mandate of section 13, would place in the hands of such carriers, rather than the commission, the power to determine to what extent the public's need for transportation services will be met. To permit a carrier voluntarily to suspend service, to place its operating rights in a state of temporary dormancy, would be, as the Court said in *Alger*, (p 112), 'to read the 10-day limitation on discontinuance of service out of the statute altogether.'" 377 Mich at 291, 292.

The Court agreed with *Bejin* that as a general rule administrative findings of fact, if supported by evidence, are conclusive upon a reviewing court, but it stated that there is nothing in *Bejin* to indicate that a reviewing court may not set aside a commission order if based upon a misapplication of the relevant law to the facts found. The Court was of the opinion that this was the situation in the *Alger* and *Associated Truck* cases; the Court was further of the opinion that where the undisputed facts show abandonment or discontinuance of service the commission must find a forfeiture or be reversed.

We are of the opinion that the findings by the commission in this case are supported by the evi-

dence and that the commission properly applied the law to the facts.

One important point found both by the circuit court and the commission on remand (January 11, 1968) distinguishes *Associated Truck* from the case before us now: " 'Here the carrier designedly and intentionally avoided intrastate traffic.' "   377 Mich at 286.   This avoidance was thought to conflict with the requirement of MCLA § 475.1(f) [Stat Ann 1970 Cum Supp § 22.531(f)] that a motor carrier "holds himself out to the public as being engaged in the business of a common carrier."   In the present case, there was no evidence presented to the commission that Kramer failed to hold itself out as a carrier to the public; that Kramer discouraged traffic to or from Pinconning; or that Kramer did anything inconsistent with actually performing service to Pinconning.   The commission did find that by interlining Kramer provided as good, and in some cases better, service to Pinconning; that Kramer physically handled truckload traffic itself; and that Kramer did not deny service or fail to hold itself out as a supplier of service.   Consequently, we find the commission did not err in concluding there was no abandonment or discontinuance within the meaning of the statute established by the Supreme Court in the *Bejin* and *Associated Truck* cases.

Affirmed.

All concurred.