YELLOW FREIGHT SYSTEM, INC. v PSC (AFTER REMAND)

Docket No. 23211. Submitted June 10, 1976, at Lansing.—Decided June 20, 1978. Leave to appeal applied for.

In 1961 Yellow Freight System, Inc., held a certificate of authority to operate a motor vehicle freight carrier service over certain intrastate routes in southeastern Michigan. In that same year, Yellow entered into an agreement to transfer that certificate to Central Transport, Inc. An action was commenced before the Public Service Commission by competitors of Yellow seeking a determination that Yellow had discontinued certain of its intrastate service routes for more than ten days and that its certificate for such service was revoked by operation of law. The PSC found in favor of Yellow. On appeal to circuit court, the Ingham Circuit Court overturned the PSC determination. An appeal was then taken to the Michigan Supreme Court which reversed the circuit court because of erroneous findings of fact and remanded the case to the PSC to reopen proofs, *Associated Truck Lines, Inc v Public Service Comm*, 377 Mich 259 (1966). After additional hearings the PSC concluded that there had been a discontinuation of service by Yellow for more than ten days and that its certificate of authority was revoked by operation of law due to the abandonment. The Ingham Circuit Court affirmed. Yellow and Central appealed to the Court of Appeals which affirmed in part and reversed in part and remanded to the PSC for further proceedings, *Yellow Freight System, Inc v Public Service Comm*, 73 Mich App 476 (1977). Upon remand the PSC again concluded that Yellow's certificate was revoked by operation of law. The findings made by the PSC were transmitted to the Court of Appeals. After remand the Court of Appeals *held:*

The facts found by the PSC have adequate evidentiary support; however, the PSC inappropriately focused on the intent of the shipper and not the carrier in determining that the ship-

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Commerce § 4.
[2, 5] 13 Am Jur 2d, Carriers §§ 95, 96.
[3] 64 Am Jur 2d, Public Utilities § 284.
[4] 2 Am Jur 2d, Administrative Law § 691.

ments in question were interstate in nature rather than intrastate. The PSC's decision was based upon an erroneous application of the controlling legal principles and since intrastate service was rendered during the time in question, the carrier's certificate of authority was not revoked by operation of law.

Reversed.

DANHOF, C. J., dissented. He would hold that there was competent evidence to support the PSC's finding that there was no intrastate service rendered by Yellow during the time period in question and that since no services were provided under the provisions of the act pertaining to discontinuance of service over intrastate routes, the certificate of authority was revoked by operation of law. He would affirm.

OPINION OF THE COURT

1. CARRIERS—COMMON CARRIERS—INTERSTATE SHIPMENTS—INTRASTATE SHIPMENTS.

Merely because shipments wholly within the state contain cargo that the shipper intends to subsequently transport to a destination outside the state does not mean that the shipment was interstate when viewed from the position of the carrier; nor does the fact that interstate and intrastate cargo is carried in the same trailer mean that intrastate service has not been rendered by the carrier.

2. CARRIERS—COMMON CARRIERS—ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—INTRASTATE SHIPMENTS—CERTIFICATE OF AUTHORITY.

The revocation of a common carrier's certificate to operate over certain intrastate routes requires a finding by the Public Service Commission that no intrastate shipments were made for the statutorily prescribed period (MCL 476.13; MSA 22.546).

DISSENT BY DANHOF, C. J.

3. ADMINISTRATIVE LAW—PUBLIC SERVICE COMMISSION—APPEAL AND ERROR—STATUTES.

*A party appealing from an order of the Public Service Commission has the burden of showing by clear and convincing evidence that the commission's determination is unlawful or unreasonable (MCL 479.20; MSA 22.585).*

4. APPEAL AND ERROR—ADMINISTRATIVE LAW—FINDINGS OF FACT—EVIDENCE.

*Findings of fact by an administrative agency should not be overturned if they are supported by competent evidence.*

5. CARRIERS—COMMON CARRIERS—ADMINISTRATIVE LAW—PUBLIC SER-
VICE COMMISSION—INTRASTATE SHIPMENTS—INTERSTATE SHIP-
MENTS—CERTIFICATE OF AUTHORITY—REVOCATION OF CERTIFI-
CATE OF AUTHORITY—ABANDONMENT.

> *The revocation of a common carrier's certificate of authority to operate over intrastate routes because of discontinuance of service over the routes requires a finding by the Public Service Commission that no intrastate services were provided for a statutorily prescribed period; services performed by a common carrier under a certificate of public convenience and necessity from the Interstate Commerce Commission are not services performed under the statute which authorizes the revocation of a certificate of authority to operate over intrastate routes where the service has been discontinued (MCL 476.13; MSA 22.546).*

*Farhat, Burns & Story, P. C.,* and *Clark, Klein, Winter, Parsons & Prewitt* (by *Arthur P. Boynton),* for plaintiff Yellow Freight System, Inc.

*Albert Green,* for plaintiff Central Transport, Inc.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Marvin L. Bromley,* Assistants Attorney General, for Michigan Public Service Commission.

*Matheson, Bieneman, Parr, Schuler & Ewald* (by *John W. Ester),* for intervening defendants Associated Truck Lines, Inc., Ogden & Moffett Company, Earl C. Smith, Inc., and United Truck Service, Inc.

*Warner, Norcross & Judd* (by *Joseph M. Sweeney),* for defendant Associated Truck Lines, Inc.

Before: DANHOF, C. J., and BASHARA and D. T. ANDERSON,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

After Remand

Bashara, J. Plaintiffs appeal a decision of the Michigan Public Service Commission holding that their certificate of authority to operate over a certain intrastate route was revoked by operation of law pursuant to 1933 PA 254, § 13. MCL 476.13; MSA 22.546.

We need not review the 17-year history of this controversy, nor specify the facts. Both are adequately delineated in our previous opinion. See *Yellow Freight System, Inc v Public Service Comm,* 73 Mich App 476; 252 NW2d 495 (1977).

The fact-finding ambiguity, with which our previous opinion was concerned, has been resolved by the revised opinion of the PSC. Therefore, in conjunction with our conclusion on this issue in our prior opinion,[1] we hold that the facts found by the PSC have adequate evidentiary support.

In reaching its decision, the PSC considered the "essential character" of the shipments made during the period in which it was claimed that no intrastate shipments occurred. Finding that the shipments were "essentially" interstate in character, the PSC concluded that no intrastate shipments were made for more than ten days.

Specifically, the PSC found that during the period in question there was some separation in shipments between Marysville and Centerline. However, it was also found that these shipments were merely incidental to an interstate purpose, because the trailers used continued on to a destination outside of Michigan.[2] The nature of the

---

[1] See *Yellow Freight System, Inc v Public Service Comm,* 73 Mich App at 485–488; 252 NW2d at 499–500.

[2] The pertinent text of the PSC opinion is as follows:

"The next question to be considered is the nature of the shipments

facility at which the separation occurred was also considered as indicative of an interstate purpose.[3]

Support for utilizing an "essential character" standard was derived from two cases concerned with the rate structures applicable to the shipments involved.[4] Those cases necessarily focused

between Marysville and Centerline. It is generally true that the question is determined by the essential character of the commerce, the most important factor being the presence or absence of a fixed and persisting intent of the shipper that his goods move to a destination in another state. *Baltimore & O S W R Co v Settle,* 260 US 166, 43 S Ct 23; 67 L Ed 189 (1922).

"Case law does support appellant's contention that for-hire motor transportation within the confines of a single state, of property which has moved from or will move to points beyond the same state by private carriage, is *intrastate. Report of Interstate Commerce Commission,* 94 MCC 541. Also, wherever a separation in fact exists between transportation services wholly within the state and that between the states, a like separation may be recognized between the control of the state and that of the nation. *Chicago and Eastern Illinois R Co v Public Service Commission of Indiana,* 205 Ind 253 [186 NE 330] (1933).

"In this case, the record establishes that there was a separation in fact between transportation service wholly within the state and that between the states. However, the shipments in question were purely incidental to the interstate purpose being carried out, inasmuch as the trailers used for such shipments went from Centerline to destinations in other states which were known when the shipments originated. There is no evidence to support a finding that the separation of goods occurring in Centerline was for the purpose of intrastate delivery. In fact, all the evidence is to the contrary, including testimony regarding the nature of the facilities at Centerline."

[3] The facility was Chrysler Corporation's national parts distribution center at Centerline, Michigan.

[4] In *Baltimore & O S W R Co v Settle,* 260 US 166, 170; 43 S Ct 28; 67 L Ed 189 (1922), the Court concluded that "whether the interstate or the intrastate tariff is applicable depends upon the essential character of the movement". Nothing in the opinion of Mr. Justice Brandeis would suggest that the essential character of shipments should alter the nature of the service rendered by a carrier shipping certain cargo between two points within the same state.

Similarly, in *Chicago & Eastern I R Co v Public Service Comm,* 205 Ind 253; 186 NE 330 (1933), the issue concerned the applicable rates chargeable by a carrier transporting freight within the state, but ultimately destined for points outside the state. The Court held:

"The movement from the Sunnyside mine to the interchange track at Devon street was no part of an interstate movement. It was not by said movement placed in interstate commerce, *as the journey to another state had not yet begun.* The cars were delivered to the

upon the intention of the shipper, not the carrier, in determining whether the shipments were to be carried at interstate or intrastate rates. But that perspective is inappropriate for deciding whether a carrier has rendered intrastate service.

Merely because shipments wholely within the state contain cargo that the shipper intends to subsequently transport to a destination outside the state does not mean that from the carrier's position the shipment was interstate. Nor does the fact that interstate and intrastate cargo is carried in the same trailer mean that intrastate service has not been rendered by the carrier.

The facts found by the PSC indicate that intrastate shipments were made during the pertinent period. To revoke the carrier's certificate of authority requires a finding that no intrastate shipments were made for the statutorily prescribed period. *Associated Truck Lines, Inc v Public Service Comm,* 377 Mich 259, 291; 140 NW2d 515, 528 (1966), *J E Bejin Cartage Co v Public Service Comm,* 352 Mich 139, 151; 89 NW2d 607, 614 (1958). Consequently, the decision of the PSC is based upon an erroneous application of the controlling legal principles. Since intrastate service was rendered during the time in question, the carrier's certificate of authority was not revoked by operation of law.

---

purchaser at the place agreed upon, and there accepted by it and removed to its yards, to await distribution. It is our judgment that *interstate commerce did not actually begin till the cars were assigned to their destination and had started on their final journey out of the state."* Id. at 262; 186 NE at 333. (Emphasis added.)

Even if this rationale was applicable to the case under review, the shipments made from Marysville to Centerline would retain their *intrastate* character, since the carrier did not commence any transportation of the separated cargo in *interstate* commerce. This result is not changed by the fact that such cargo was shipped in vehicles with other cargo that continued on to destinations outside the state.

Reversed. No costs, a public question being involved.

D. T. ANDERSON, J., concurred.

DANHOF, C. J. *(dissenting)*. On appeal, the burden of proof is on appellant to show by clear and satisfactory evidence that the commission's determination is unlawful or unreasonable, MCL 479.20; MSA 22.585, *Short Freight Lines, Inc v Public Service Comm,* 25 Mich App 408; 181 NW2d 560 (1970). Findings of fact by an administrative agency are not to be overturned if they are supported by competent evidence, *Associated Truck Lines, Inc v Public Service Comm,* 377 Mich 259; 140 NW2d 515 (1966), *J E Bejin Cartage Co v Public Service Comm,* 352 Mich 139; 89 NW2d 607 (1958). I would hold that there is competent evidence to support the Public Service Commission's findings of fact,[1] and that the facts found adequately support the result reached.

I disagree with the majority's conclusion that the facts found by the Public Service Commission indicate, as a matter of law, that appellants did not "discontinue any service established under the provisions of this act", MCL 476.13; MSA 22.546. To revoke a carrier's certificate of authority requires a finding that no services were provided under the provisions of the act, *Associated Truck Lines, Inc, supra, J E Bejin Cartage Co, supra.* Services performed under a certificate of public convenience and necessity from the Interstate Commerce Commission are not "services provided under the provisions of this act", *Associated Truck*

---

[1] See my opinion in *Yellow Freight System, Inc v Public Service Comm,* 73 Mich App 476, 490; 252 NW2d 495 (1977).

*Lines, Inc, supra,* at 274. The Public Service Commission found as a fact that the shipments in question moved from the shipper's plant in Marysville, Michigan, to a distribution center in Centerline, Michigan. These less-than-full load shipments were carried on a truck and trailer which continued on to deliver the remainder of the load outstate.[2] The Public Service Commission went on to find that the separation of goods at the distribution center was for the purpose of interstate delivery. There is competent evidence, from the testimony taken and the circumstantial evidence presented, including the nature of the facilities, to support this finding. This evidence is sufficient to support a finding of a fixed and persistent intention to ship interstate and therefore, that interstate shipment had commenced, *Baltimore & O S W R Co v Settle,* 260 US 166; 43 S Ct 28; 67 L Ed 189 (1922). In *Southern Pacific Transportation Co v Interstate Commerce Comm,* 565 F2d 615 (CA 9, 1977), the Court held that the respondent had not introduced sufficient evidence to support a finding of a fixed and persistent intention to ship interstate, but the facts in this case are adequate to support a finding of such intent. Even after reviewing the facts from a carrier's perspective,[3] they adequately support a finding of a discontinuance. Since the findings of fact support the Public Service Commission's determination that no ser-

---

[2] This fact distinguishes this case from *Southern Pacific Transportation Co v Interstate Commerce Comm,* 565 F2d 615 (CA 9, 1977). In *Southern Pacific Transportation,* no trailer moved interstate. In the instant case, the carrier was engaged in interstate commerce and therefore subject to regulation by the ICC. I would agree that if the facts showed no interstate movement, then *Southern Pacific Transportation* would control.

[3] The "carrier's perspective" standard is suggested in the majority opinion, *supra,* and some of the reasons supporting the use of this standard are set out in *Associated Truck Lines, Inc v Public Service Comm,* 377 Mich 259, 289-291; 140 NW2d 515 (1966).

vices were "provided under the provisions of this act", I would affirm their decision.